Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/26/2021 08:08 AM CST

Timothy H. Weiland, appellee and
cross-appellant, v. Ann M.
Weiland, appellant and
cross-appellee.

___ N.W.2d ___

Filed December 4, 2020.    No. S-20-034.

1. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce
   decree presents a question of law, in connection with which an appellate
   court reaches a conclusion independent of the determination reached by
   the court below.
2. **Divorce: Property Division: Pensions.** Marital assets are subject to
   equitable division in a dissolution proceeding, and retirement benefits
   whether vested or not vested are eligible for inclusion in the mar-
   ital estate.
3. **Divorce: Property Division: Armed Forces: Pensions.** A military pen-
   sion is a marital asset.

Appeal from the District Court for Douglas County:
Gregory M. Schatz, Judge. Affirmed in part, vacated in part,
and in part reversed and remanded with directions.

Andrew J. Hilger, of Law Office of Andrew J. Hilger, for
appellant.

Steven J. Riekes and Elizabeth Stuht Borchers, of Marks,
Clare & Richards, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

This case arises from a divorce action between Timothy H. Weiland, appellee and cross-appellant, and Ann M. Weiland, appellant and cross-appellee, who were married in 1984 and whose marriage was dissolved in 1996. Timothy served in the U.S. Marine Corps Reserve from 1982 through 2005. In the dissolution decree, Ann was "granted one-half of the points accumulated during the marriage by [Timothy] up to the time of the decree, and shall receive the credits for those points and the equivalent amount of money in the event that [Timothy's] retirement benefits vest." After the retirement benefits vested and in order for Ann to start receiving retirement benefits, the parties each moved the district court for Douglas County for clarification of the decree.

Following a hearing, the district court ordered Timothy to pay Ann a fixed award of $465.38 per month for the retirement benefits and further ordered Timothy to pay Ann her share of Timothy's retirement benefits he had received and not paid to Ann. Ann appeals, and Timothy cross-appeals, each challenging the fixed monthly amount of Ann's marital share of Timothy's military pension. As explained below, the district court erred when it assigned a fixed monthly dollar value. Although we honor Ann's entitlement to an award of military pension benefits and affirm Ann's entitlement to back payments, we vacate the fixed monthly benefit award and the fixed monthly amount of back payments; further, we reverse, and remand with directions to determine the equitable distribution of Timothy's military retirement expressed as a formula that honors the points awarded in the decree and is consistent with a hypothetical retired pay award valued as of the date of the decree.

## STATEMENT OF FACTS

Timothy entered the U.S. Marine Corps Reserve on August 6, 1982, and the parties were married in 1984 in Omaha, Douglas County, Nebraska. When the parties divorced on

September 30, 1996, Timothy had not yet retired from the military. The only issue on appeal is the equitable distribution of Timothy's military retired pay consistent with the divorce decree and applicable legal principles. The divorce decree provided, in relevant part, as follows:

> 17. That the Petitioner [Timothy] accumulates points which apply to his retirement in the military. The Respondent [Ann] is granted one-half of the points accumulated during the marriage by the Petitioner up to the time of the decree, and shall receive the credits for those points and the equivalent amount of money in the event that Petitioner's retirement benefits vest.

Timothy retired from the military on January 12, 2005, and his pension rights vested after he turned age 60 on September 5, 2017. During his career, Timothy had earned a total of 5,822 retirement points, and after the pension rights vested, he began receiving $2,050 per month from the pension. Thereafter, Ann applied for her share of the pension to the Defense Finance and Accounting Service of the U.S. Department of Defense. However, the accounting service would not calculate or pay Ann's share to her until the district court clarified certain information necessary to determine Ann's share.

Through cross-motions, Ann and Timothy each requested that the district court clarify the decree. Ann also filed a motion to modify the decree to state the number of military retirement points earned during the marriage and a motion for back payments to require Timothy to pay Ann her share of the pension he had already received.

At trial, the parties stipulated that at the time of the September 30, 1996, decree, Timothy had earned 3,334 Reserve retirement points. However, Ann and Timothy assign different values to the cash value of one-half of 3,334 points and propose different formulas to determine the fixed amount Ann should receive monthly from Timothy's military retirement amount. We examine the proposed formulas in the analysis section, below. Ann valued her interest at $586 per month, and Timothy valued Ann's interest at $383 per month.

The district court filed a supplemental order on January 6, 2020, in which it found that it had jurisdiction to modify and clarify the decree to the extent necessary to effect its terms. The court awarded Ann $465.38 per month, beginning November 2019. The court also ordered Timothy to pay $9,549.60 to Ann, representing back payments of $465.38 per month for the 27 months between September 2017 and November 2019, less the income taxes already paid by Timothy.

Ann appeals, and Timothy cross-appeals.

ASSIGNMENTS OF ERROR

Ann claims, summarized and restated, that the district court erred because its clarification of the parties' decree did not award her an amount based on a proportion of Timothy's total retirement points.

Timothy cross-appeals and claims, summarized and restated, that the district court erred in the amount it awarded to Ann by not utilizing a hypothetical date of retirement as of the date of the decree to determine Ann's interest in his retirement.

STANDARD OF REVIEW

[1] The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below. *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020).

ANALYSIS

On appeal and cross-appeal, Ann and Timothy each contend that the district court erred by modifying the decree and awarding Ann the fixed monthly amount of $465.38. Ann claims that the fixed monthly amount should be $586, whereas Timothy claims that the fixed monthly amount should be $383. We reject both proposals. Instead, in order to be faithful to the language of the original equitable decree and consistent with Nebraska jurisprudence as well as federal authority, we conclude that the district court erred when it awarded a fixed monthly amount. We vacate the fixed dollar amount and

reverse, and remand to clarify that Ann is entitled to a hypothetical retired pay award valued as of the date of the decree plus back payments as explained below.

[2,3] In Nebraska, marital assets are subject to equitable division in a dissolution proceeding and retirement benefits "whether vested or not vested" are eligible for inclusion in the marital estate. Neb. Rev. Stat. § 42-366(8) (Reissue 2016). In *Longo v. Longo*, 266 Neb. 171, 663 N.W.2d 604 (2003), we recognized that a military pension was a marital asset. When, as here, a decree is entered prior to the retirement of one of the parties who is a military service member, a clarifying order may later be necessary to determine the rights of the parties. See *Schwartz v. Schwartz*, 275 Neb. 492, 747 N.W.2d 400 (2008), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010). Our cases have recognized that it is proper for a court to compensate a spouse only for the years for which the marriage coincided with the military service in determining the nonmilitary spouse's share of pension benefits. See *Longo v. Longo, supra*.

Historically, spousal interests in military retirement have been determined in several different ways consistent with federal law, including the Uniformed Services Former Spouses' Protection Act (USFSPA), Pub. L. No. 97-252, § 1001, 96 Stat. 730 (codified as amended at 10 U.S.C. § 1408 (2018)), and Department of Defense rules and regulations. See Department of Defense Financial Management Regulation (DoD FMR) 7000.14-R, vol. 7B. Federal law has evolved over time. See, e.g., *Longo v. Longo, supra* (discussing history of division of military pensions). In considering military pension orders subsequent to dissolution, we have affirmed a fixed monthly dollar amount where the decree so provided, see *Longo v. Longo, supra*, and recognized the validity of a point-value method, see *Schwartz v. Schwartz, supra*.

It is generally agreed that the purpose of the passage of the USFSPA in 1982 was, in part, to permit the States to apply their state dissolution law to division of nondisability

military retired pay. See *Starr v. Starr*, 70 Va. App. 486, 828 S.E.2d 257 (2019). A Senate report stated that the USFSPA was

> intended to remove the federal pre-emption found to exist by the United States Supreme Court [in *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981),] and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this [USFSPA] requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution.

S. Rep. No. 97-502, at 12 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1555, 1596, 1611. Thus, Nebraska's equitable division of military pensions is compatible with federal law.

A limitation on former spouses' retired pay was included in the National Defense Authorization Act for Fiscal Year 2017. See Pub. L. No. 114-328, 130 Stat. 2164 (Dec. 23, 2016). The amendment to 10 U.S.C. § 1408(a)(4)(B) reads as follows:

> [I]n the case of a division of property as part of a final decree of divorce . . . that becomes final prior to the date of a member's retirement, the total monthly retired pay to which the member is entitled shall be[:]
>
> . . . the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce, dissolution, annulment or legal separation, as computed [with appropriate] cost-of-living adjustments[.]

Prior to the 2016 amendment to 10 U.S.C. § 1408, "states could determine the marital share of a military retirement based on the length of service to either the date of retirement or to the date of divorce." *Starr v. Starr*, 70 Va. App. at 494, 828 S.E.2d at 261.

As stated in *Fulgium v. Fulgium*, 240 Md. App. 269, 281-82, 203 A.3d 33, 40-41 (2019),

> [t]his amendment to § 1408 was intended to modify "the division of military retired pay in a divorce decree to

the amount the member would be entitled based upon the member's pay grade and years of service at the time of the divorce rather than at the time of retirement." S. Rept. 114-255, National Defense Authorization Act for Fiscal Year 2017, at 168 (114th Congress, 2016); Kristy N. Kamarck, Cong. Research Serv., RL31663, *Military Benefits for Former Spouses: Legislation and Policy Issues*, at 15 (2018) (hereinafter "CRS Report"). Rather than dividing actual retired pay at the time of retirement, the benefit would be frozen at the time of divorce. The rationale for using a "date of divorce" method for pension valuation was that a former spouse would not receive a windfall benefit from promotions and other pay increases that accrued from the date of divorce to the date of retirement, to which the former spouse made no contribution. *See* CRS Report, 15.

. . . In the National Defense Authorization Act for Fiscal Year 2018, Congress made technical corrections to this provision to clear up language problems in the [National Defense Authorization Act for Fiscal Year 2017]. *See* Pub. L. 115-91, 131 Stat. 1283, 1429 (Dec. 12, 2017); Brentley Tanner & Amelia Kays, *Winds of Change: New Rules for Dividing the Military Pension at Divorce*, 30 J. Am. Acad. Matrimonial Law 491, 497 (2017-2018). The current version of the statute provides that, in the situation where there is a final decree of divorce prior to the date of the member's retirement, disposable retirement pay is based on "the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce, dissolution, annulment, or legal separation, as computed under section 1406 or 1407 of this title, whichever is applicable, increased by the sum of specified cost of living adjustments[.]" 10 U.S.C. § 1408(a)(4)(B).

As stated in *Starr v. Starr*, 70 Va. App. 486, 491, 828 S.E.2d 257, 260 (2019),

[i]n summary, in determining the total interest of a member's military retirement for purposes of [state] equitable distribution, . . . the Amendment simply requires that the trial court use the date of divorce as the hypothetical date of retirement so that the amount of retired pay "us[es] the member's retired pay base and years of service on the date of the decree of divorce." 10 U.S.C. § 1408(a)(4)(B).

In the view of *Starr v. Starr*, after its adoption, this provision freezes a spouse's interest in the service member's military service as of the date of divorce, precluding consideration of military service or pay increases after the date of divorce.

At this juncture, we read the language of the decree against the foregoing legal authority. In the decree, Ann was awarded points having a future value which were "accumulated during the marriage" but only "up to the time of the decree." Given the language of the decree, we conclude that Ann is entitled to an award reflecting her property interest in Timothy's retired pay valued as if he had retired at the time of property division and further conclude that this approach is consistent with Nebraska jurisprudence as well as federal authority. Because the decree was expressed as points rather than a fixed dollar amount, we now discuss the parties' competing formulas.

The approaches advanced by the parties have been called the *date of retirement approach* as advocated for by Ann and the *date of divorce approach* as advocated for by Timothy. See 2 Brett R. Turner, Equitable Distribution of Property, § 6:25 (4th ed. 2019).

Using the *date of retirement approach*, Ann claims that the best interpretation of the decree would mean that the equivalent value of her half of the points is $586 per month. She arrives at this figure by dividing half the points Timothy had earned on the date of the decree (1,667) by his total number of retirement points (5,822) and multiplying this fraction of his career earnings (1667/5822) by Timothy's monthly retirement amount ($2,050) to determine her share of a fixed monthly benefit.

Timothy contends that the value of the pension benefit is governed by 10 U.S.C. § 1408, including the 2016 amendment codifying the *date of divorce approach*, and Department of Defense rules and regulations. Timothy's approach requires developing a hypothetical retired pay award and is essentially a frozen benefit, as reflected in DoD FMR 7000.14-R, vol. 7B, ch. 29, ¶ 290213:

> Hypothetical retired pay award is an award based on a percentage of retired pay that is calculated using variables provided in a court order that are different from the member's actual retirement variables. The retired pay calculated using the ordered variables is called the member's hypothetical retired pay. A hypothetical award typically attempts to define the property interest in the retired pay as if the member had retired at the time the court divided the member's military retired pay based upon the member's rank, or high-3 amount, and years of service accrued to that point in time. Thus, the former spouse does not benefit from the member's pay increases due to promotions or increased service time after the divorce.

Formulas to determine the value of military retirement and hypothetical retirement dates based on the laws in effect at the time of the decree are available in DoD FMR 7000.14-R, vol. 7B, ch. 29.

Under the approach quoted above, Timothy contends that Ann's 1,667 retirement points are equivalent to $383 per month, reached by calculating the hypothetical value of his retirement points as though he was able to retire on the date of the decree with the same military record, years of service, salary, and rank as of the date of the decree.

As we have noted, the decree entered in this case provided Ann credit for "one-half of the points accumulated [by Timothy] during the marriage" and "up to the time of the decree." We agree with Timothy that a hypothetical retired pay award is most consistent with the language of the parties' decree and with principles of equitable distribution. However,

contrary to Timothy's contention, given the plain language
of the decree describing Ann's interest in the retirement ben-
efit as points rather than a fixed dollar amount, the result-
ing court order should not be a fixed award, but should be
expressed as a formula that honors the original decree and
freezes Ann's points to the value of Timothy's retirement
amount as of the date of the decree. Given the decree, the
marital estate includes only that portion of the pension which
is earned during the marriage, which is an acceptable divi-
sion in Nebraska. *Reichert v. Reichert*, 246 Neb. 31, 516
N.W.2d 600 (1994). See *Longo v. Longo*, 266 Neb. 171, 663
N.W.2d 604 (2003). Under the decree, the value of Ann's
points should not be inflated to allow her to benefit from
Timothy's pay increases after the divorce decree due to subse-
quent promotions or length of service. Ann's *date of retirement
approach* would inappropriately compensate her in excess
of the original decree by taking into account the advance-
ment of Timothy's career from 1996 through 2005, after they
had divorced.

Although the parties could estimate the present value of
Ann's points using the hypothetical retired pay formulas pro-
vided by the Department of Defense regulations, as Timothy
did in his briefing, we find that a fixed dollar award is inap-
propriate given the language of the original decree. Changing
Ann's interest from a portion of points, as stated in the decree,
to a fixed dollar award, as ordered by the district court, may
well be appropriate at present, but ultimately modifies Ann's
interest over time. A fixed award ignores the long-term effect
of cost-of-living adjustments, and thus Ann would earn rela-
tively less over time than was reflected in her original award.
The district court erred when, at the behest of the parties, it
strayed from provisions of the decree and entered judgment for
Ann based on a theory of a fixed dollar retirement award.

We reverse and vacate the district court's order and remand
the matter with directions to value Timothy's hypothetical
retired base pay, to be determined based on the average basic

pay for the most recent 36 months (known as high-3) prior to the hypothetical retirement date of September 30, 1996. Applicable Department of Defense regulations provide guidance for the district court to create a hypothetical retired pay formula based on the relevant facts. To enable the Defense Finance and Accounting Service to calculate the hypothetical retired pay amount, the clarifying court order must provide the following: (1) the percentage the former spouse was awarded; (2) the hypothetical years of creditable service, or, in the case of a reservist, the Reserve retirement points on which the hypothetical retired pay is to be based; (3) the hypothetical retired pay base; and (4) the hypothetical retirement date. See DoD FMR 7000.14-R, vol. 7B, ch. 29, ¶ 290608(F). The decree should be clarified to reflect that Ann is awarded 50 percent of the disposable military retired pay Timothy would have received had he become eligible to receive military retired pay with a "retired pay base (high-3) of [$]_____" and with 3,334 Reserve retirement points on September 30, 1996. See DoD FMR 7000.14-R, vol. 7B, ch. 29, figure 29-1.

## CONCLUSION

Under the parties' 1996 divorce decree, the district court erred when it assigned a fixed monthly dollar value to Ann's interest in Timothy's military retirement benefits. Although we honor Ann's entitlement to an award of military pension benefits and affirm Ann's entitlement to back payments, we vacate the award of fixed past and future monthly retirement benefits to Ann and remand the matter for further clarification of the decree, consistent with directions in this opinion, to determine the equitable distribution of Timothy's military retirement expressed as a formula that honors the points awarded in the decree and consistent with a hypothetical retirement date as of the date of the decree, September 30, 1996.

Affirmed in part, vacated in part, and in part
reversed and remanded with directions.