Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:09 PM CDT

William D. Jenne, appellant, v.
Kimberlee A. Jenne, appellee.
___ N.W.3d ___

Filed July 2, 2024.    No. A-23-403.

1. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.
2. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.
3. **Divorce: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.
4. **Judgments: Final Orders.** It is inherent to a judgment's finality that all are bound by the original language used, and all ought to interpret the language the same way. Even when the determination involves "interpretation" of the judgment or decree, its meaning is determined, as a matter of law, by its contents.
5. **Divorce: Judgments.** Unlike disputes over the meaning of an ambiguous contract, the parties' subjective interpretations and intentions are wholly irrelevant to a court's declaration, as a matter of law, as to the meaning of an ambiguous decree.
6. **Divorce: Pensions: Time.** The rationale for using a "date of divorce" method for pension valuation is that a former spouse would not receive a windfall benefit from promotions and other pay increases that accrued from the date of divorce to the date of retirement, to which the former spouse made no contribution.
7. **Divorce: Armed Forces: Pensions: Time.** When dividing a military pension in a divorce proceeding, the nonserving spouse should only be

entitled to the portion of the pension that was earned during the mar-
riage, which is an acceptable division in Nebraska.

8. **Divorce: Attorney Fees: Appeal and Error.** In an action involving
a marital dissolution decree, the award of attorney fees is discretion-
ary with the trial court, is reviewed de novo on the record, and will be
affirmed in the absence of an abuse of discretion.

9. **Divorce: Attorney Fees.** In dissolution cases, as a matter of custom,
attorney fees and costs are awarded to prevailing parties. In awarding
attorney fees in a dissolution action, a court shall consider the nature
of the case, the amount involved in the controversy, the services actu-
ally performed, the results obtained, the length of time required for
preparation and presentation of the case, the novelty and difficulty of
the questions raised, and the customary charges of the bar for simi-
lar services.

Appeal from the District Court for Sarpy County: Stefanie
A. Martinez, Judge. Reversed and remanded with directions.

John A. McWilliams and Philip B. Katz, of Gross, Welch,
Marks & Clare, P.C., L.L.O., for appellant.

Michael B. Lustgarten, of Lustgarten Dudzinski, L.L.C., for
appellee.

Pirtle, Chief Judge, and Riedmann and Bishop, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

William D. Jenne (Bill) appeals from an order entered by
the district court for Sarpy County that denied his amended
complaint for declaratory judgment or, in the alternative, his
complaint to modify, and awarded his ex-spouse, Kimberlee
A. Jenne (Kim), an attorney fee of $2,500. The district court
found that Kim's benefit under Bill's military pension should
be valued as of the date Bill retired from the military, as
opposed to the date they divorced. However, based on spe-
cific language in the parties' marriage dissolution decree, we
determine that Kim's benefit should have been valued as of
the date of the parties' divorce. Therefore, for the reasons that

follow, we reverse the district court's order entered on April 27, 2023, and remand the matter with directions.

## BACKGROUND

Bill joined the U.S. Air Force Reserve in May 1979. Bill and Kim were married on February 24, 1984. They divorced on April 19, 2001. When they divorced, Bill had been in the Air Force Reserve for 21 years 11 months and had the rank of major with a corresponding O-4 pay grade. As part of their divorce, they entered into a property settlement agreement. Paragraph IX of this property settlement agreement contained a section concerning the distribution of Bill's eventual military pension:

Each party shall be awarded one-half (½) of [Bill's] military retirement benefits accumulated during the course of the marriage. The valuation date for these benefits shall be the date of entry of the Decree of Dissolution of Marriage and Property Settlement Agreement by the Court herein. The parties shall utilize the coverture method for calculating [Kim's] portion of the military benefits in which the total number of months of the marriage shall be the numerator and the total number of months of military service shall be the denominator.

Several months later, an amendment was necessary because the Defense Finance and Accounting Service (DFAS) required different language to appropriately divide the pension. Therefore, on July 23, 2001, the district court entered an order nunc pro tunc that changed the "the third full sentence in [p]aragraph IX of the Property Settlement Agreement" to state:

The parties shall utilize the coverture method for calculating [Kim's] portion of the military benefits in which the total number of months of the marriage shall be the numerator (which number of months is determined to be 206 calculated by taking the number of months between the date of the marriage, February 24, 1984, and the date

of the entry of the Decree of Dissolution of Marriage, April 19, 2001) and the total number of months of military service shall be the denominator.

Following the parties' divorce, Bill remained in the Air Force Reserve until May 2009. Although he retired at that time, as a reservist, he could not start drawing his retirement benefits until he turned 60 years of age. When his military service ended, Bill was a colonel with an O-6 pay grade. He began receiving his military pension in November 2016.

However, upon Bill's retirement, DFAS required another amendment to the agreement to properly divide Bill's military pension. Accordingly, on March 22, 2017, the district court issued an amended order nunc pro tunc, which stated that

the Order Nunc Pro Tunc entered herein on July 23, 2001[,] regarding paragraph IX of the Property Settlement Agreement entered on April 19, 2001, shall be hereby changed . . . as follows:

The parties shall utilize the coverture method for calculating [Kim's] portion of the military benefits. [Kim] is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, in which the total number of months of marriage during the member's creditable military service shall be the numerator (which number of months is determined to be 206 calculated by taking the number of months between the date of marriage, February 24, 1984, and the date of the entry of the Decree of Dissolution of Marriage, April 19, 2001), divided by the member's total number of months of creditable service.

(Emphasis omitted.)

However, because the Air Force Reserve calculates retirement benefits on a point system as opposed to months of service utilized for active duty members, DFAS later required an order that utilized Bill's earned points instead of months of service. Therefore, on September 13, 2017, the district court issued a "Military Retired Pay Division Order," which stated:

[Kim] (the former spouse) is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is 4,363 Reserve retirement points earned during the period of the marriage, divided by the member's total number of Reserve retirement points earned.

. . . [O]n the date of the Decree of Dissolution of Marriage (April 19, 2001) the member's military pay grade was Major and the member had 21 years and 11 months of service for basic pay purposes.

Following the entry of this division order, which Bill, through his attorney, had approved as to form and content, Kim received $81,343.28 from Bill's pension from 2016 to 2022. As of October 2022, she was receiving $1,924.90 per month.

On May 10, 2021, Bill filed a complaint for declaratory judgment that alleged Kim was receiving a larger distribution from the pension than what she was owed. On December 7, 2022, Bill filed an amended complaint for declaratory judgment or, in the alternative, a complaint to modify. He essentially claimed that the district court's 2017 order was vague because it did not provide a number for the denominator of the fraction and was also incorrect because it was using an inaccurate number for the numerator. Bill also asserted that Kim was receiving excessive benefits because the calculation of Kim's distribution was using his entire time of service and the pay grade he held when he retired, as opposed to the number of years he had accrued during the marriage and his pay grade at the time of the divorce. He claimed this was an error because the original decree had ordered the valuation of Kim's benefits to be calculated at the time of their divorce. Accordingly, Bill claimed that Kim's distribution should be based on his O-4 salary, when he was a major, and the retirement points he had earned up until their divorce, and not based on his O-6 salary and the total amount of retirement

points he had accumulated when he retired as a colonel many years later.

A trial was held on March 15, 2023. Bill called as a witness Richard Crane, who offered expert testimony regarding the calculation and distribution of military pensions. He explained that the formula used to calculate an Air Force reservist's pension is multifactored. Because reservists are not always on active duty, they earn one point for every day of active duty service they perform within a given year. That number of points is then divided by 360 to reach the number of qualifying years for retirement. The number of qualifying years is multiplied by 2.5 percent to get the percentage of the reservist's monthly salary that he or she will be entitled to under the reservist's pension. The salary used in that calculation is the highest pay earned in any 3 consecutive 3 years, which is commonly referred to as the "high three."

The formulas can be summarized as follows:
• Total Retirement Points ÷ 360 = Years of Service
• Years of Service × 2.5 percent = Salary Percentage
• Salary Percentage × High Three = Monthly Pension Benefit

Crane testified that Kim was receiving an erroneously high percentage of Bill's pension because the DFAS was using a "date of retirement" approach to value her distribution, as opposed to a "date of divorce" method. The difference in these methodologies is that the date of divorce method applies the "frozen benefit rule." When the frozen benefit rule is used, the valuation of the reservist's retirement benefit is calculated as if the reservist retired on the date of divorce. Therefore, when the date of divorce method is used, the ex-spouse only receives a portion of the benefits the reservist earned during the marriage.

In Crane's report, which was received as evidence, he calculated what he believed Kim's benefit should be under the "date of divorce" method. He did this by calculating what Bill's benefit would have been if he retired on the day of their divorce.

Crane stated that Bill had earned 5,746 retirement points as of April 19, 2001, when the parties divorced. Therefore, Crane divided the total amount of Bill's points (5,746) by 360, which equals 15.9611. This equates to 15.9611 years of qualifying service. He then multiplied 15.9611 by 2.5 percent, which equals 39.9028 percent, the percentage of Bill's monthly pay owed under the pension. At the time of the divorce, Bill was a major with a "high three" of $4,986.60. Crane multiplied Bill's salary of $4,986.60 by 39.9028 percent to get to a monthly retirement benefit of $1,989.79. This means that if Bill had retired on April 19, 2001, he would have received a monthly pension of $1,989.79.

To determine how much of that $1,989.79 Kim was owed, Crane took the 50 percent Kim was owed and multiplied that by a fraction. The numerator of that fraction was the amount of retirement points Bill earned during the marriage, which Crane calculated to be 4,055 points. Then, by utilizing the date of divorce methodology, Crane calculated the denominator by taking the total amount of Reserve retirement points Bill had earned *at the time of divorce*, 5,746, as opposed to the total amount of Reserve retirement points Bill earned throughout his entire military service.

Accordingly, Crane took the amount of retirement points Bill earned during the marriage (4,055) and divided that by Bill's total retirement points at the time of divorce (5,746). This equaled .7057 percent, meaning that as of the date of the decree, the parties were married for 70.57 percent of Bill's total military service. He then multiplied that number by 50 percent. That result is 35.2854 percent, which represents the portion of Bill's pension owed to Kim. As stated, if Bill retired on the day of the divorce as a major with an O-4 pay grade, his monthly benefit would have been $1,989.79. Therefore, taking that monthly benefit of $1,989.79 and multiplying it by 35.2854 percent, Crane concluded that Kim's distribution would have been $702.11, before cost-of-living allowances.

A summarization of using the date of divorce methodology versus the date of retirement approach with that formula can be found below:

| Date of Retirement Approach | Date of Divorce Approach |
| --- | --- |
| [(Points Earned During Marriage<br>÷<br>Points at Time of Retirement)<br>×<br>50 Percent]<br>×<br>Monthly Pension Benefit With Pay Grade at Retirement (Colonel, O-6)<br><br>= Kim's Monthly Pension Benefit | [(Points Earned During Marriage<br>÷<br>Points at Time of Divorce)<br>×<br>50 Percent]<br>×<br>Monthly Pension Benefit With Pay Grade at Divorce (Major, O-4)<br><br>= Kim's Monthly Pension Benefit |

Accounting for the cost-of-living allowances, Crane found that Kim's monthly distribution was $969.54 in 2016, $972.45 in 2017, $991.90 in 2018, $1,019.67 in 2019, $1,035.99 in 2020, $1,049.46 in 2021, and $1,111.38 in 2022. He then calculated how much Kim was actually paid from 2016 to 2022 and found that she was overpaid by $7,456.78 during that period. Additionally, he stated her overpayments were continuing to increase as she was receiving $813.52 more per month than she was owed.

During Crane's testimony, he referred to the Nebraska Supreme Court's decision in *Weiland v. Weiland*, 307 Neb. 882, 951 N.W.2d 519 (2020), which we will discuss in further detail later in the opinion. But essentially, Crane attempted to assert that *Weiland* defines the frozen benefit rule and provides that using the rule is the proper way to calculate the division of military retirement benefits, "specifically so that

a former spouse does not receive any benefit from future service rank or pay increases that the member actually achieves after the date of divorce."

At trial, Kim briefly testified as to her belief that the four orders all said the same thing in regard to her interest in Bill's pension. She also testified that DFAS had processed all the orders. And she provided some testimony to support her request for attorney fees.

On April 27, 2023, the district court issued an order that denied Bill's amended complaint. The order found that *Weiland* was inapplicable, the language of the parties' decree supported a date of retirement approach, and using the date of retirement approach was not precluded under Nebraska or federal law. In this conclusion, the court partially relied upon DFAS' acceptance of the orders and stated that if "[f]ederal law precluded a date of retirement approach being used in a divorce case, DFAS would certainly have rejected the previous Orders." The court further found that Kim, as the prevailing party, was entitled to attorney fees in the amount of $2,500.

Bill now appeals the district court's order.

## ASSIGNMENTS OF ERROR

Bill assigns, restated, that the district court erred by (1) not utilizing the date of divorce to allocate Kim's share of his military pension, (2) awarding Kim attorney fees, and (3) not awarding him attorney fees.

## STANDARD OF REVIEW

[1] The meaning of a divorce decree presents a question of law, in connection with which we reach a conclusion independent of the determination reached by the court below. *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

[2] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *SID No. 596 v. THG Development*, 315 Neb. 926, 2 N.W.3d 602 (2024).

## ANALYSIS

### Division of Pension

Bill argues the formula used to calculate Kim's pension benefit should be based on the O-4 pay grade he held at the time of the divorce and the amount of retirement points he earned up until the divorce was finalized. In contrast, Kim contends the agreement clearly anticipates the use of Bill's entire military service to calculate her share of the pension.

[3-5] A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. *Bayne v. Bayne, supra.* It is inherent to a judgment's finality that all are bound by the original language used, and all ought to interpret the language the same way. *Id.* Even when the determination involves "interpretation" of the judgment or decree, its meaning is determined, as a matter of law, by its contents. *Id.* Unlike disputes over the meaning of an ambiguous contract, the parties' subjective interpretations and intentions are wholly irrelevant to a court's declaration, as a matter of law, as to the meaning of an ambiguous decree.

*Weiland v. Weiland*, 307 Neb. 882, 951 N.W.2d 519 (2020), involved a similar situation as the one before us. That case also dealt with how to calculate an ex-wife's benefit under her ex-husband's military pension, which had not vested at the time the parties divorced. Before reaching the case's merits, the Supreme Court explained that, in 1982, Congress passed the Uniformed Services Former Spouses' Protection Act to remove federal preemption and permit states to apply their own laws in determining the proper distribution of military pensions. *Weiland v. Weiland, supra.*

The court then explained that the Uniformed Services Former Spouses' Protection Act was amended in 2017 to limit former spouses' entitlement to their partner's pension upon divorce:

"[I]n the case of a division of property as part of a final decree of divorce . . . that becomes final prior to the date of a member's retirement, the total monthly retired pay to which the member is entitled shall be[:]

". . . the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce, dissolution, annulment or legal separation, as computed [with appropriate] cost-of-living adjustments."

*Weiland v. Weiland*, 307 Neb. at 887, 951 N.W.2d at 523 (quoting 10 U.S.C. § 1408(a)(4)(B) (2018)).

[6] The court then cited a Maryland Court of Appeals case that articulated the purpose of the amendment:

"[T]his amendment . . . was intended to modify 'the division of military retired pay in a divorce decree to the amount the member would be entitled based upon the member's pay grade and years of service at the time of the divorce rather than at the time of retirement.' . . . Rather than dividing actual retired pay at the time of retirement, the benefit would be frozen at the time of divorce. The rationale for using a 'date of divorce' method for pension valuation was that a former spouse would not receive a windfall benefit from promotions and other pay increases that accrued from the date of divorce to the date of retirement, to which the former spouse made no contribution. . . .

"[Therefore:] The current version of the statute provides that, in the situation where there is a final decree of divorce prior to the date of the member's retirement, disposable retirement pay is based on 'the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service on the date of the decree of divorce, dissolution, annulment, or legal separation . . . increased by the sum of specified cost of living adjustments.'. . ."

*Weiland v. Weiland*, 307 Neb. at 887-88, 951 N.W.2d at 523-24 (quoting *Fulgium v. Fulgium*, 240 Md. App. 269, 203 A.3d 33 (2019)).

After the Supreme Court detailed this history and current state of the federal statute, it turned to the merits of the case before it. In deciding whether the divorce decree at issue called for the date of divorce or date of retirement method, the court relied on the specific language of the decree, which provided:

> "17. That the [ex-husband] accumulates points which apply to his retirement in the military. The [ex-wife] is granted one-half of the points accumulated during the marriage by the [ex-husband] up to the time of the decree, and shall receive the credits for those points and the equivalent amount of money in the event [the ex-husband's] retirement benefits vest."

*Weiland v. Weiland*, 307 Neb. 882, 884, 951 N.W.2d 519, 520 (2020).

[7] The Supreme Court read the "language of the decree against the foregoing legal authority" and found that the ex-wife was awarded points accumulated during the marriage and only up to the time of the decree. *Id*. at 889, 951 N.W.2d at 524. It found that based on the decree's language, "the marital estate include[d] only that portion of the pension which [was] earned during the marriage, which is an acceptable division in Nebraska." *Id.* at 891, 951 N.W.2d at 525. The court reasoned this conclusion was proper because "the value of [the ex-wife's] points should not be inflated to allow her to benefit from [the ex-husband's] pay increases after the divorce decree due to subsequent promotions or length of service." *Id.* We find the same to be true here.

The district court found *Weiland* was inapplicable because it "specified that its acceptance of the date of divorce approach [was] confined to the specific language of the decree." However, we find the language in the original decree in this case to also be clear that each party shall be awarded

one-half of Bill's military retirement benefits "accumulated during the course of the marriage" and that it was to be valued as of the "date of entry of the Decree."

With regard to how the parties agreed to divide Bill's anticipated military retirement pay, the most significant language in the property settlement agreement is found in the first two sentences of paragraph IX. They state, "Each party shall be awarded one-half (½) of [Bill's] military retirement benefits accumulated during the course of the marriage. The valuation date for these benefits shall be the date of entry of the Decree of Dissolution of Marriage and Property Settlement Agreement by the Court herein." The next sentence states that the parties "shall utilize the coverture method for calculating [Kim's] portion of the military benefits in which the total number of months of the marriage shall be the numerator and the total number of months of military service shall be the denominator." The "total number of months of military service" can only be read consistently with the first two sentences to mean the total number of months of military service "accumulated during the course of the marriage." The parties specifically agreed to value "these benefits" as of the "date of entry of the Decree," and the only way to do that was to freeze the benefit at the time of divorce. There is no ambiguity in the language of the decree. Although modifications were necessary to revise "months" to "points," subsequent attempts to "clarify" the decree in response to DFAS letters failed to properly do so.

Ultimately, the district court's September 13, 2017, "Military Retired Pay Division Order" set forth the reserve points earned during the marriage as the numerator (4,363), but then generally referred to the denominator as Bill's "total number of Reserve retirement points earned." While this suggests the denominator should include all the points Bill accumulated during his service, even those earned before and after the divorce, such an interpretation is contrary to the clear language of the decree that each party shall be awarded one-half

of Bill's military retirement benefits "accumulated during the course of the marriage" and that it was to be valued as of the "date of entry of the Decree." The order's final paragraph then states that "on the date of the Decree of Dissolution of Marriage (April 19, 2001) the member's military pay grade was Major and the member had 21 years and 11 months of service for basic pay purposes." This language is more in line with the original decree, in that it can be read to freeze Bill's pay grade, Bill's years of service, and Kim's interest in Bill's military service as of the date of divorce. This properly precludes consideration of Bill's military service or increased rank and pay after the date of divorce. See *Weiland v. Weiland*, 307 Neb. 882, 951 N.W.2d 519 (2020).

Therefore, like the court's holding in *Weiland*, we conclude that Kim's share of the pension should not be inflated to allow her to benefit from the pay increases and promotions Bill received after the divorce. As stated in the original decree, she should receive one-half of Bill's military retirement benefits "accumulated during the course of the marriage" and it should be valued as of the "date of entry of the Decree." As such, we reverse the decision of the district court.

In summary, we conclude that Kim should have been awarded a percentage of Bill's disposable military retired pay, to be computed by multiplying 50 percent times a fraction, the numerator of which is 4,363 Reserve retirement points earned during the period of the marriage, divided by Bill's 5,746 retirement points earned as of the date of divorce on April 19, 2001, and that his hypothetical retirement pay as of the date of decree should be based on his military pay grade at that time, which was major (O-4). We also note that while Bill and his expert witness claimed the correct amount of the numerator should have been 4,055 points instead of 4,363 points, Bill, through his attorney, previously approved as to form and content the 4,363 points in the September 13, 2017, "Military Retired Pay Division Order." We therefore find no error in maintaining 4,363 points as the fraction's numerator.

### Attorney Fees

Bill next assigns the district court abused its discretion in awarding Kim attorney fees and not awarding him attorney fees.

[8,9] In an action involving a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). In dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Id.* In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id.*

The district court awarded Kim attorney fees because she was the prevailing party. However, because we are reversing the decision of the district court as to the merits of the case, Kim is no longer the prevailing party. As such, we reverse the district court's award of attorney fees and remand the matter to the district court to determine the amount of attorney fees, if any, that should have been awarded to Bill as the prevailing party in the district court.

### CONCLUSION

We determine the district court erred when it utilized the date of retirement instead of the date of divorce in determining Kim's share of Bill's disposable military retirement pay as set forth above. And, as our decision no longer renders Kim as the prevailing party, we reverse her award of attorney fees and remand the matter to the district court to determine the amount of attorney fees, if any, to be awarded to Bill as the prevailing party in the district court.

Reversed and remanded with directions.