Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/15/2024 09:08 AM CST

Larry J. Stava, appellee, v.
Carine F. Stava, appellant.
___ N.W.3d ___

Filed November 15, 2024.    No. S-23-249.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. ____: ____. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

5. **Divorce: Property Division.** There is no mathematical formula by which property awards can be precisely determined, but, generally, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.

6. ____: ____. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

7. **Divorce: Property Division: Proof.** The burden of proof rests with the party claiming that the property is nonmarital.

8. **Divorce: Property Division.** The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact.

9. ____: ____. All property accumulated and acquired by either spouse during the marriage is, as a general rule, part of the marital estate.

10. ____: ____. Appreciation, be it active or passive, in the marital interest is always marital; it is simply part of the marital property.

11. **Divorce: Property Division: Equity.** The equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as separate property.

12. ____: ____: ____. The real value of property is the equity and not the mere legal title.

13. **Divorce: Property Division.** Under the "source of funds" rule, acquisition of encumbered property only occurs when and to the extent it becomes unencumbered by paying off the principal of an encumbering loan.

14. **Divorce: Property Division: Mortgages.** The use of marital funds to pay down the mortgage on what was initially separate property acquires the property during the marriage to the extent the principal is paid, creating a proportionate marital interest in that property.

15. **Divorce: Property Division: Equity.** Because the portion of the property's equity created during the marriage with marital funds constitutes marital property, the appreciation on that equity, whether it be passive or active, is also marital property.

Petition for further review from the Court of Appeals, Moore, Bishop, and Arterburn, Judges, on appeal thereto from the District Court for Washington County, John E. Samson, Judge. Judgment of Court of Appeals affirmed in part, and in part reversed and remanded with directions.

David Pontier, of Koenig | Dunne, P.C., L.L.O., for appellant.

Donald A. Roberts, of Roberts Law, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

The husband filed a complaint for dissolution after approximately 18 years of marriage. The parties dispute on appeal whether two adjacent lots are marital property. One lot encompassed what later became the marital home. On the other lot,

the parties built a barn before the marriage for the wife to oper-
ate a horse training business. The real estate was purchased by
the husband before the marriage, but the husband and wife
were both borrowers on loans encumbering the properties.
Through a combination of marital and premarital funds, the
loans were paid in full by the time of the dissolution action.
The properties appreciated significantly due to market forces
during the marriage. At issue is whether a marital interest was
acquired by paying down with marital funds the principal bal-
ance on the loans.

## BACKGROUND

Larry J. Stava and Carine F. Stava met in 2000 and were
married in the State of Nebraska on May 25, 2002. Larry filed
a complaint for dissolution on December 11, 2020. No children
were born of the marriage.

## Lot 14

A few years before Larry's marriage to Carine, he purchased
property known as Tax Lot 14 (Lot 14) from his parents for
an unknown amount. Larry paid cash and paid in full. Lot 14
consisted of 32 acres of real property. There is no evidence of
the value of Lot 14 at the time of purchase.

To finance construction of a house on the property for him-
self and his children from his first marriage, Larry obtained a
bank loan in the amount of $195,000 on September 9, 1999,
secured by Lot 14. Payments were $1,424.05 per month, with
a balloon payment due on October 1, 2004, of $186,724.93.
A house and a shed were built on Lot 14 before Larry mar-
ried Carine.

The house on Lot 14 became Larry and Carine's marital
home after they married in 2002. Russell Nelsen, a certified
appraiser who testified on behalf of Larry, opined that the
value of Lot 14, including the home, was $385,000 on the date
of the marriage. Nelsen elaborated that the $385,000 value in
2002 consisted of $121,600 for the acreage and $263,400 for
the house.

The principal balance on the loan was $190,306 when Larry and Carine married, Larry's having paid $4,694 toward the principal. In other words, Larry had $194,694 in equity in Lot 14 when he married Carine.

Carine's name was never added to the deed for Lot 14. However, during their marriage, marital funds were used to pay down a total of $84,620 of the principal on the debt secured by Lot 14. Marital funds were also used to pay property taxes, insurance, and interest on the debt encumbering Lot 14. Marital funds were used to maintain the property and to finish and add a new room to the basement. Carpet in the home was replaced with hardwood flooring. A home equity line of credit on Lot 14 was regularly used for marital expenses.

Marital funds were used to make payments on the original mortgage during Larry and Carine's marriage until September 15, 2003, when the original note was paid off and a new loan established for $189,000, again secured by Lot 14. At the time of refinancing, the new principal balance was $187,560. Both Larry and Carine were listed as borrowers on the new loan. That loan for $189,000 was paid with marital earnings until October 2009, when the loan was refinanced again. The remaining principal balance at the time of the 2009 refinancing was approximately $135,979, and the loan was refinanced with that principal balance.

Marital funds were used to make payments on the refinanced loan until 2014, at which time, the loan had a principal balance of $107,126.88. On November 7, 2014, Larry used the proceeds of the sale of premarital property to pay off the remaining mortgage balance in the sum of $107,126.88.

Nelsen testified that Lot 14 had increased from a market value of $385,000 in 2002 to a market value of $860,000 by the time Larry filed his petition for dissolution. The $860,000 value in 2022 consisted of $512,000 for the land and $348,000 for the house. Nelsen opined that the increase in the value of Lot 14 during the marriage was "mostly" due to market forces stemming from the increase in values for acreage properties.

He explained that while the residence was well-maintained, typical maintenance does not increase the value of property, and he considered Larry and Carine's maintenance of the property to be typical.

## Lot 15

Larry purchased property known as Tax Lot 15 (Lot 15) for $169,000 in cash and in full on January 6, 1998. Lot 15 consisted of approximately 34 acres of land. There is no evidence, other than its purchase price, of its value at that time.

Before the marriage, Larry and Carine formed an equal partnership, "The Farm at Butterflat Creek, L.L.C," with the intention that Carine would run a business offering horse training and riding lessons in a barn they would build on Lot 15. In October 2001, Larry and Carine jointly took out as borrowers a loan in the amount of $180,215.75 to build the barn. They also built a shed on the property. The collateral for the original loan was both Lot 14 and Lot 15. The construction was completed before Larry and Carine married. Carine's name was not added to the deed for Lot 15.

Nelsen opined that the value of Lot 15 in 2002, when Larry and Carine married, was $386,700. Of that, the land value was $128,500 and the value of the newly constructed barn was $258,200.

Marital income ultimately paid off $25,631 of the principal on the debt encumbering Lot 15. Marital funds were also used to pay property taxes, insurance, interest, and fees. Marital funds were used to maintain the property.

The original note required payments of $2,229.36 per month with a balloon payment due April 1, 2007. These payments were made with marital funds until 2004. In 2004, the balance of the loan was $156,754.74. Larry and Carine paid off the balloon mortgage and refinanced through a loan from Larry's mother's trust in the amount of $157,000. The loan was made jointly to Larry and Carine and secured by a deed of trust and a promissory note with Larry and Carine both as

promisors. The loan required monthly payments in the amount of $1,626.99. The collateral for the loan was Lot 15. Marital funds were used to make the payments on the loan until Larry's mother's death in 2005.

On August 4, 2005, Larry's mother's trust distributed funds from Larry's inheritance in the form of payment in full of the remaining balance of the promissory note encumbering Lot 15 and of another note not at issue in this appeal. The balance of the note on Lot 15 at the time of the distribution was $137,701.

Nelsen opined that the value of Lot 15 had increased from $386,700 in 2002 to $794,000 by November 2022 when the petition of dissolution was filed, with the value attributable to the land being $540,000. This left the value of the barn and other improvements at $254,000. He opined that the increase in value was "mostly" based on the increase in its site value and the per-square-foot value of the house. Any increase in value not due to market forces was due to the increase in construction costs.

## ORDER OF DISSOLUTION

The district court entered the decree of dissolution on February 27, 2023. Neither party was awarded alimony. Most of the property division was not subject to dispute and was awarded according to stipulations between the parties.

Carine had asked the court to equitably divide Lot 14 and Lot 15 as marital property. Alternatively, if the court decided the properties were nonmarital, she asked that it award her an amount representing half of that portion of the loan payments made with marital funds, which went toward the principal. Those amounts were stipulated. The court concluded the lots were nonmarital.

The district court observed that separate property becomes marital by commingling, if it is inextricably mixed with marital property or the separate property of the other spouse. However, commingling does not occur if the separate property remains segregated or is traceable into its product. The court

also observed that the active appreciation rule sets forth a relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income. The court found that Larry had sustained his burden to prove that the increase in value in the properties was due to passive market forces and that no improvements were made to either property during the marriage that increased their value. The court thereby concluded that Lot 14 and Lot 15 were Larry's premarital property, apart from the $110,251 in marital contributions in the form of a paydown on the mortgages' principal. All rights, titles, and interests to Lot 14 and Lot 15 were awarded to Larry in the court's order. It awarded Carine $45,000 as a cash equalization payment, essentially refunding her half of the original amounts of the portion of the mortgage payments that went toward the principal of the loans on the properties.

## NEBRASKA COURT OF APPEALS

Carine timely appealed to the Court of Appeals. It affirmed as modified the district court's decision.[1]

Analyzing the land separately from the improvements thereon, the Court of Appeals affirmed the district court's finding that the land portion of Lot 14 was nonmarital property apart from the amount of the marital payments toward the principal. It reasoned that Larry owned the land "outright" before the marriage[2]; thus, its passive appreciation due to market forces was a nonmarital asset as well. It did not discuss the fact that the land was later encumbered by loans paid down with marital funds. The Court of Appeals similarly found that the district court did not abuse its discretion in determining that the equity in the home, apart from an equalization payment representing the original amounts of marital payments toward principal, was nonmarital property belonging to Larry. The Court of Appeals calculated that the home had $83,159.12 in remaining equity, after subtracting Larry's payments toward

[1] See *Stava v. Stava*, 32 Neb. App. 840, 6 N.W.3d 567 (2024).

[2] *Id*. at 848, 6 N.W.3d at 575.

the principal with premarital funds and the parties' payments toward the principal with marital funds during the marriage. The Court of Appeals did not state whether this remaining equity was in part a marital asset, but instead analyzed whether the appreciation of the house was readily identifiable and traceable to the nonmarital portion of the asset and whether the growth was not due to the active efforts of either party. It described this analysis as determining if a party has sustained the burden to prove that appreciation of a nonmarital asset during the marriage is nonmarital. The Court of Appeals expressed that "in our view, some portion of the $83,159.12 in appreciation could have remained characterized as marital," but it ultimately concluded that the district court did not abuse its discretion in determining otherwise.[3]

The Court of Appeals affirmed the district court's decision that the land portion of Lot 15 was nonmarital property, reasoning that Larry owned it "outright" before the marriage.[4] It did not discuss the subsequent loans encumbering the property with Larry and Carine jointly as borrowers and the paydown of the principal on the debt with marital funds. The Court of Appeals agreed with the district court that the appreciation of the land was due to passive market forces; therefore, Larry had sustained his burden to prove the appreciation was a nonmarital asset.

But the Court of Appeals reversed the district court's decision that the barn and shed constructed on the land was nonmarital property. Because the conception, construction, and financing were a joint effort, the Court of Appeals held that the improvements were marital property. It noted that the improvements did not appreciate during the marriage and had equity of $254,000. The Court of Appeals found that, after setting off $137,701 attributable to Larry's inheritance distributions that reduced the promissory note attached to Lot 15,

---

[3] *Id*. at 852, 6 N.W.3d at 577.

[4] *Id*. at 848, 6 N.W.3d at 575.

there was \$116,299 in marital equity in the barn and other improvements built on the lot. It held that Carine was entitled to half of this equity, minus the \$12,815.50 credit already awarded to her for half of the principal payments made on the debt for Lot 15. The Court of Appeals accordingly modified the dissolution decree's award to Carine to be \$90,334, rather than \$45,000.

We granted Carine's petition for further review. Larry did not petition for further review and has not assigned as error the Court of Appeals' modification of the equalization judgment.

## ASSIGNMENTS OF ERROR

On further review, Carine assigns that the Court of Appeals erred in (1) upholding the district court's classification of Lot 14 and Lot 15 as Larry's premarital properties, despite the fact that they were encumbered by loans secured by both parties and paid down with marital funds over the course of the 20-year marriage; (2) upholding the district court's application of the active appreciation rule to Lot 14 and Lot 15, because the lots were marital property; and, alternatively, (3) finding that Larry had met his burden to overcome, through the passive appreciation exception, the presumption that appreciation during the marriage is marital property.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees.[5]

[2] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[6]

---

[5] *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024).

[6] *Id.*

[3] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[7]

[4] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[8]

## ANALYSIS

[5] Neb. Rev. Stat. § 42-365 (Reissue 2016) provides for the "division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, [and] a history of the contributions to the marriage by each party," and, further, § 42-365 provides that "[t]he purpose of a property division is to distribute the marital assets equitably between the parties." There is no mathematical formula by which property awards can be precisely determined, but, generally, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.[9]

Equitable property division under § 42-365 is a three-step process.[10] The first step is to classify the parties' property as marital or nonmarital.[11] The second step is to value the marital assets and determine the parties' marital liabilities.[12] The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.[13]

---

[7] *Id.*

[8] *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004).

[9] See *Seemann v. Seemann, supra* note 5.

[10] *Schwensow v. Bartnicki*, 32 Neb. App. 798, 6 N.W.3d 549 (2024).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[6,7] This appeal involves the first step, classification of the property. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.[14] The burden of proof rests with the party claiming that the property is nonmarital.[15]

[8] The extent to which the property is marital versus non-marital presents a mixed issue of law and fact.[16] The manner and method of acquisition involve questions of fact, but the classification of the property under those facts is a legal question and not a matter of the court's discretion.[17] The second step, valuation, involves questions of fact, and the third step, dividing the marital estate in accordance with the principles of § 42-365, is a matter of discretion.[18]

[9,10] All property accumulated and acquired by either spouse during the marriage is, as a general rule, part of the marital estate.[19] The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's ability to determine how the property should be divided in an action for dissolution of marriage.[20] Appreciation, be it active or passive, in the marital interest is always marital;[21] it is simply part of the marital property.

---

[14] *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017).

[15] See, e.g., *Seemann v. Seemann, supra* note 5.

[16] See 1 Brett R. Turner, Equitable Distribution of Property § 5:1 (4th ed. 2024) (and cases cited therein).

[17] See *id.*

[18] See, e.g., *Longo v. Longo*, 266 Neb. 171, 663 N.W.2d 604 (2003); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986).

[19] See *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015).

[20] *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

[21] Brett R. Turner, *A Short Overview of Nationwide Case Law on Classification of the Marital Home*, 14 No. 3 Divorce Litig. 52 (Mar. 2002).

[11] In contrast, property that a party brings into the marriage is usually excluded from the marital estate.[22] We have said that the equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as separate property.[23] This includes its passive appreciation.

Separate property can become marital property under either "transmutation" or "active appreciation."[24] These two categories are mutually exclusive.[25] Transmutation converts an asset entirely from separate to marital and can occur through commingling if the separate property is inextricably mixed with marital property or with the separate property of the other spouse.[26] Active appreciation converts to marital property only the increase in a nonmarital asset's value due to a contribution of marital funds or efforts.[27] This is opposed to passive appreciation, which is appreciation caused by separate contributions and nonmarital forces.[28]

[12-14] "Acquisition" of property in the first instance can be an ongoing process. It occurs only as it is paid for,[29] as the real value of property is the equity and not the mere legal title.[30] Under the majority "source of funds" rule, acquisition of encumbered property only occurs when and to the extent it becomes unencumbered by paying off the principal of an

---

[22] See *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

[23] *Parde v. Parde*, 313 Neb. 779, 794, 986 N.W.2d 504, 515 (2023).

[24] Annot., 39 A.L.R.6th 205, 218 (2008).

[25] See *id*.

[26] See, *Seemann v. Seemann, supra* note 5; 39 A.L.R.6th, *supra* note 24.

[27] See *Parde v. Parde, supra* note 23; 39 A.L.R.6th, *supra* note 24.

[28] See *Parde v. Parde, supra* note 23.

[29] See, *Aubert v. Wilson*, 483 P.3d 179 (Ala. 2021); *In re Marriage of Moore*, 28 Cal. 3d 366, 618 P.2d 208, 168 Cal. Rptr. 662 (1980); *Kaaa v. Kaaa*, 58 So. 3d 867 (Fla. 2010); *Dorbin v. Dorbin*, 105 N.M. 263, 731 P.2d 959 (N.M. App. 1986); *Brackney v. Brackney*, 199 N.C. App. 375, 682 S.E.2d 401 (2009); *Jordan v. Postell*, 434 S.C. 510, 864 S.E.2d 558 (S.C. App. 2021); *Moran v. Moran*, 29 Va. App. 408, 512 S.E.2d 834 (1999).

[30] Turner, *supra* note 21.

encumbering loan.[31] Said property has not been acquired to the extent the principal balance of that debt remains unpaid.[32] Instead, it is acquired when, and to the extent, the parties reduce the principal balance.[33] Thus, the use of marital funds to pay down the mortgage on what was initially separate property acquires the property during the marriage to the extent the principal is paid, creating a proportionate marital interest in that property.[34] This is "regardless of how many different mortgages existed during the marriage."[35]

Furthermore, it is the overwhelming majority rule that when acquisition occurs via payments on the principal of encumbering debt, the marital estate receives not just a refund of the monetary contribution toward the principal of the loan, but also a fair return on its investment, which includes passive appreciation.[36] "The common sense result, and the consensus rule nationwide," is to divide the passive appreciation proportionately between the marital and separate interests if marital funds were used to pay down the principal of a mortgage for property that appreciates during the marriage due to passive market forces.[37] "[A]ll of the appreciation caused by market forces should not go to the separate estate merely because inception of title happened to occur before the marriage," as it is unfair to allow an owner spouse to receive the full benefit

---

[31] See *id.*

[32] 1 Turner, *supra* note 16, § 5:26.

[33] *Id.*

[34] See *Kessler v. Kessler*, 411 P.3d 616 (Alaska 2018). See, also, *Aubert v. Wilson, supra* note 29.

[35] Brett R. Turner, *Unlikely Partners: The Marital Home and the Concept of Separate Property*, 20 J. Am. Acad. Matrim. Law. 69, 115 (2006).

[36] See 3 Brett R. Turner, Equitable Distribution of Property § 10:15.5 (4th ed. 2024). See, also, e.g., *Travis v. Travis*, 59 S.W.3d 904 (Ky. 2001); *Selby v. Selby*, 149 S.W.3d 472 (Mo. App. 2004); *Willis v. Willis*, 86 N.C. App. 546, 358 S.E.2d 571 (1987).

[37] See 3 Turner, *supra* note 36, § 10:15.5 at 363.

of the passive appreciation when marital funds were used to pay the mortgage and acquire equity in the property.[38]

[15] In sum, because the portion of the property's equity created during the marriage with marital funds constitutes marital property, the appreciation on that equity, whether it be passive or active, is also marital property.[39] "[A]ppreciation in marital equity is not appreciation in nonmarital property to begin with."[40] The passive appreciation may have a dual character to the extent that the equity in the property also has a dual character; the passive appreciation in the separate interest remains separate property while the passive appreciation in the marital interest remains marital property.[41]

To calculate the respective values of a hybrid marital/nonmarital property, a percentage value of the respective marital and nonmarital parts must be determined:

> Since the marital and separate interests attach to the entirety of the asset and not to specific parts, each interest appreciates or depreciates passively in the same percentage as the entire asset.
>
> The marital contribution is therefore equal to the marital contribution, plus the passive appreciation in the marital contributions. The passive appreciation in the marital contributions is the amount of the marital contribution, multiplied by the percentage of appreciation in the entire asset. . . .
>
> Likewise, the separate interest is equal to the separate contributions, plus the passive appreciation in the separate contributions. The passive appreciation in the separate contributions is the amount of the separate

---

[38] See *id*. at 364. See, also, e.g., *Kaaa v. Kaaa, supra* note 29; *Jordan v. Postell, supra* note 29.

[39] See *id*.

[40] 3 Turner, *supra* note 36, § 10:11.10 at 342.

[41] See 1 Turner, *supra* note 16, § 5:24.

contribution, multiplied by the percentage appreciation in the entire asset.[42]

The percentage appreciation in the entire asset is equal to the value of the asset at divorce, minus the total marital and separate contributions, divided by the total marital and separate contributions.[43] The simplest formula for this is $MI = V(MC/TC)$.[44] "MI" is the marital interest, "MC" is marital contributions, and "TC" is the total marital and separate contributions.[45] "V" is the value at the time of divorce.[46]

Thus, for example, a property was purchased for $100,000 and is worth $200,000 at the time of divorce. Spouse A paid $50,000 toward the equity with separate contributions. Another $50,000 toward the equity was paid during the marriage with marital funds. We would use the formula above to find the marital interest in the property as follows:

Value at the time of divorce (V) = $200,000
Marital Contribution (MC) = $50,000
Total Contribution (TC) = $100,000
Solving for the Marital Interest (MI)
$MI = V(MC/TC)$
$MI = 200,000(50,000/100,000)$
$MI = 200,000(1/2)$
$MI = \$100,000$

---

[42] *Id.* at 608-09.

[43] 1 Turner, *supra* note 16, § 5:24.

[44] See *id.*

[45] See *id.*

[46] See *id.* (mathematically equivalent is the formula:
P is the percentage of appreciation in the entire asset or $P = (V\text{-}TC)/TC$
$MI = MC(1+P);$
$MI = MC(1+(V\text{-}TC/TC));$
$MI = MC(1+V/TC\text{-}TC/TC);$
$MI = MC(1+V/TC\text{-}1);$
$MI = MC(V/TC);$
$MI = V(MC/TC)).$

A parallel formula computes the value of the separate interest: $SI = V(^{SC}/_{TC})$, with "SI" being separate interest and "SC" being separate contributions.[47] Using our example data from above, we would use this formula to determine Spouse A's appreciated value in the property as follows:

> Value at the time of divorce (V) = $200,000
> Separate Contribution by Spouse A (SC) = $50,000
> Total Contribution (TC) = $100,000
> Solving for Separate Interest (SI)
> $SI = V(SC/TC)$
> $SI = 200,000(50,000/100,000)$
> $SI = 200,000(1/2)$
> $SI = \$100,000$

In this example, using the results of the two formulas, Spouse A's separate interest in the appreciated value of the property is $100,000 and the marital interest is also $100,000 in the appreciated value of the property.

While we have not used the term "source of funds" rule, the principles of the majority rule align with our case law. In *Harris v. Harris*,[48] for example, we recognized that marital payments to a mortgage encumbering a premarital property created marital property that included its passive appreciated value. The marital home had been purchased by the husband before his marriage and had a premarital value of $54,500. The value of the residence had appreciated due to market forces to a value of $82,000 by the time of dissolution. It was unknown what the husband's equity in the home was before the marriage. The parties encumbered the residence with mortgages during the marriage, and it was encumbered in the amount of $60,600 at the time of trial. The district court awarded the house to the husband, subject to the mortgages, for which the husband was ordered to be solely responsible. It

---

[47] *Id.*

[48] *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). See, also, *Heald v. Heald, supra* note 22.

did not, however, set it aside as the husband's separate, non-marital property such that he was entitled to the entirety of the equity in its value at the time of dissolution, and the husband appealed. We affirmed the finding that the house was marital. We explained that the husband was not entitled, as his separate property, to the entirety of the $21,400 in equity of the house at the time of dissolution, because that equity grew, in part, due to mortgage payments made from marital funds. While we agreed that, in theory, any equity in the house before the marriage should have been set aside as the husband's separate property, we observed that the husband had failed to establish what that amount was. As such, the district court did not err in including the entirety of the equity in the residence in the marital estate.

Also apposite to the case at bar is *Eis v. Eis*,[49] wherein we held that the dissolution court did not err in finding that the entirety of an acreage containing the marital home was marital because of marital payments on the mortgage—even though the husband purchased the property before the marriage. The property was subject to two mortgages before the marriage, and these were consolidated during the marriage in a loan under which both the husband and wife were obligated. The consolidated loan was paid with marital funds during the marriage. We observed that the husband and wife regularly borrowed against the property for marital expenses and satisfied those liens with marital funds. While the husband alleged he had contributed $34,000 to the property, worth $575,000 at the time of dissolution, we held the lower court did not err in finding it entirely marital due to commingling, when the husband presented no evidence regarding the value of the tract separate from its improvements or that the appreciation in value was not due to the wife's investment of $60,000 in home renovation and garage construction.

---

[49] *Eis v. Eis*, 310 Neb. 243, 965 N.W.2d 19 (2021).

We hereby expressly adopt the source of funds rule. We recognize the district court's discretion in applying the source of funds rule and recognize that the mathematical formulas above may not be the only method of applying the source of funds rule in every situation.

The district court and the Court of Appeals correctly found as a factual matter that the appreciation of Lot 14 and Lot 15 was passive. But the real question is whether some portion of the lots became marital via principal paydown with marital funds. To the extent the properties were acquired with marital funds through the acquisition of equity therein, the active appreciation rule is not applicable and passive appreciation of that portion of the properties belongs to the marital estate.

Because of some lack of clarity in our case law, the district court did not consider whether the marital estate's acquisition of equity in the properties acquired a proportionate marital interest that includes passive appreciation—and it did not determine the equitable division of said marital interest. Similarly, with respect to Lot 14 and the land portion of Lot 15, the Court of Appeals utilized an active appreciation analysis and did not consider the source of funds rule.

We reverse the Court of Appeals' decision affirming the district court's judgment with respect to Lot 14 and the land portion of Lot 15. We remand the cause to the Court of Appeals with directions to reverse the district court's judgment and remand the cause to the district court for a new hearing on the question of the equitable division of Lot 14 and the land portion of Lot 15. The Court of Appeals should direct the district court to consider whether it is appropriate in this matter to implement the source of funds rule adopted herein to ensure an equitable distribution of the marital property.

Neither Larry nor Carine challenge on further review that part of the Court of Appeals' decision reversing the district court's judgment as to the barn and other improvements on Lot 15, holding that their present equity value of $254,000 was joint marital property due to the joint effort under which

they were constructed and operated. We affirm that part of the Court of Appeals' decision.

CONCLUSION

We affirm the Court of Appeals decision as to the improvements on Lot 15, but reverse the remainder of its decision and remand the cause with directions to reverse the district court's judgment and remand the cause to the district court for a new hearing on the equitable division of Lot 14 and the land portion of Lot 15, after determining whether implementation of the source of funds rule is necessary to equitably separate the marital property in this matter.

Affirmed in part, and in part reversed
and remanded with directions.

Cassel, J., concurring in part, and in part dissenting.

Albert Einstein reputedly said: Not everything that can be counted counts, and not everything that counts can be counted.

Confronted by a deluge of mathematics in the majority opinion, I fear that the bar and trial bench may read it to require precision inconsistent with the settled polestar principle applying the statutory mandate and with the oft-repeated standard of review.

The majority opinion correctly recites the controlling statute,[1] the settled polestar principle of law,[2] and the standard of review.[3] I likewise have no quarrel with the "source of funds" rule—the concept that the use of marital funds to pay debt incurred upon what was initially separate property can create a proportionate marital interest in that property. Finally, the majority seems to "recognize the district court's discretion"

---

[1] See Neb. Rev. Stat. § 42-365 (Reissue 2016) (requiring equitable distribution of property).

[2] See *Seemann v. Seemann*, 316 Neb. 671 6 N.W.3d 502 (2024) (no mathematical formula, polestar being fairness and reasonableness as determined by facts of each case).

[3] See *id*. (de novo on record for abuse of discretion).

in applying the rule and to "recognize that the [mathematics] may not be the only method" of doing so.

But other language in the majority opinion can be read to compel a dogmatic approach. For example, the majority states that "[t]o calculate the respective values of a hybrid marital/nonmarital property, a percentage value of the respective marital and nonmarital parts *must be determined*." (Emphasis supplied.) The string of mathematics then follows. The tension between this rigid, formulaic approach and the purported recognition of trial court discretion places both bench and bar in a quandary.

I would commit the application of the "source of funds" rule to the sound discretion of the trial court. To the extent that the majority does otherwise, I respectfully dissent.