IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HOLDCROFT V. HOLDCROFT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ROBIN HOLDCROFT, NOW KNOWN AS ROBIN RUCKER, APPELLEE,

V.

BRANDON HOLDCROFT, APPELLANT.

Filed June 10, 2025.   No. A-24-590.

Appeal from the District Court for Red Willow County: MICHAEL E. PICCOLO, Judge. Affirmed.

Adam R. Little, of Nebraska Legal Group, for appellant.

Samantha J. Merrill, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., and Baylee M. Hadwiger, Senior Certified Law Student, for appellee.

RIEDMANN, Chief Judge, and MOORE and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Brandon Holdcroft appeals from the decree entered by the district court for Red Willow dissolving his marriage to Robin Holdcroft, now known as Robin Rucker. Brandon challenges the court's classification, valuation, and division of property. For the following reasons, we affirm.

## II. BACKGROUND

Brandon and Robin were married in 2004. In May 2022, Robin filed a complaint for dissolution of marriage. A trial was held in October 2023 during which the following evidence was adduced.

Three children were born of the marriage, two of which were minors at the time of the trial. During the marriage, the parties had operated a roofing company, and later a towing business,

together. Robin testified that sometime in 2011, she had taken out student loans to pursue a bachelor's degree in business management. She used her degree in operating the businesses and had overseen bookkeeping for both. Robin still had unpaid student loans at the time of the trial.

The parties separated in May 2022. Brandon became incarcerated in October, after being convicted of possession of stolen property. He was serving a 2-year sentence on that conviction at the time of trial. He had also been convicted in three other counties and was ordered to serve another 2-year sentence following the expiration of his current sentence. He had two other cases pending at the time of the dissolution trial, in which he was charged with multiple felonies. The towing business was not currently in operation due to his incarceration, but he planned to resume it following his release. Brandon testified he was unsure when he would be released from prison.

A joint property statement (JPS) was received into evidence. Robin testified she had identified the existent property, provided her opinion as to the value of the items, and sent the document to Brandon. The exhibit shows Brandon provided his opinion of the value of some items, but not all.

According to the JPS, the parties owned various parcels of real property accumulated during the marriage. They also owned a plethora of vehicles, only some of which were in working condition, as well as many tools and other equipment. The parties disagreed as to the value and ownership of some items of property listed in the JPS. Specific facts as to these disputes are set forth in our analysis.

Following the trial, the district court entered a decree dissolving the parties' marriage and distributing their marital property. As is relevant to this opinion, Brandon was awarded various items including two semi-trucks and two excavators. Robin was awarded all real property. The court also determined Robin's student loans were marital debt and awarded the debt to her. Brandon was ordered to pay Robin an equalization payment.

In November 2023, Brandon filed a motion to alter or amend the court's decree arguing, in part, that the court's decision was not supported by sufficient evidence or was contrary to the law, and that the decree financially strained him. Similarly, Robin filed a motion for new trial arguing the decree was unsupported by the evidence and contrary to the law. A hearing was held on the filings in March 2024, during which the parties stipulated to the value of specific items and negotiated the redistribution of some marital property. Later that month, the court entered an amended decree reflecting the stipulations.

To correct various jurisdictional issues irrelevant to this appeal, the district court entered an order in July 2024, vacating all prior decrees and issuing a new amended decree. The marital assets and debts were distributed as reflected in the March 2024 amended decree, and Robin was awarded sole legal and physical custody of the minor children. Brandon appeals.

## III. ASSIGNMENTS OF ERROR

Brandon assigns the district court (1) abused its discretion by including nonmarital property in the marital estate, (2) abused its discretion by improperly valuing certain assets of the marital estate, and (3) inequitably divided the marital estate.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Seemann v. Seemann*, 318 Neb. 643, 18 N.W.3d 118 (2025). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024).

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id*.

## V. ANALYSIS

Neb. Rev. Stat. § 42-365 (Reissue 2016) provides for the "division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, [and] a history of the contributions to the marriage by each party," and further provides that "[t]he purpose of a property division is to distribute the marital assets equitably between the parties." There is no mathematical formula by which property awards can be precisely determined, but, generally, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Stava, supra*.

Equitable property division under § 42-365 is a three-step process. *Stava, supra*. The first step is to classify the parties' property as marital or nonmarital. *Id.* The second step is to value the marital assets and determine the parties' marital liabilities. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Stava, supra*.

Regarding the first step, any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Id.* The burden of proof rests with the party claiming that the property is nonmarital. *Id.* The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact. *Id.* The manner and method of acquisition involve questions of fact, but the classification of the property under those facts is a legal question and not a matter of the court's discretion. *Id.* The second step, valuation, involves questions of fact, and the third step, dividing the marital estate in accordance with the principles of § 42-365, is a matter of discretion. *Stava, supra*.

Under Nebraska common law, as a general rule, property accumulated and acquired by either spouse during the marriage is part of the marital estate, whereas property a party brings into the marriage is excluded from the marital estate. *Seemann v. Seemann*, 318 Neb. 643, 18 N.W.3d 118 (2025). Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties. *Wright v. Wright*, 29 Neb. App. 787, 961 N.W.2d 834 (2021).

A nonmarital interest in property may be established by credible testimony. *Novotny v. Novotny*, 32 Neb. App. 142, 995 N.W.2d 64 (2023). A spouse's own testimony can establish a

tracing link, which tracks an asset to a nonmarital source. See *id*. Of course, triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. *Id*.

## 1. DISTRICT COURT DID NOT INCLUDE NONMARITAL PROPERTY IN DISTRIBUTION

Brandon assigns the district court abused its discretion in including nonmarital property in its distribution. He contends Robin's student loan debt and two excavators should have been excluded as nonmarital property.

### (a) Student Loan Debt

Brandon argues that Robin's student loan debt was improperly considered marital property because, although there is no dispute she incurred the debt during the marriage, there "is nothing in the record that indicates any portion of these loans were taken out for living expenses or other purposes aside from the cost of obtaining the [d]egree." Brief for appellant at 15.

Robin prepared a JPS, forwarded it to Brandon, he completed his portion and filed it with the court. In that JPS, the student loan debt was identified as marital debt and Robin indicated it should be assigned to her. Brandon did not contest this on the JPS.

At trial, Robin testified she obtained her bachelor's degree in business management in 2011, during the marriage, and used the knowledge obtained through that degree to do bookkeeping for both the roofing company and the towing business. She testified the current amount owed on the loans was shown on the JPS, and she indicated that the loans should be assigned to her because they were in her name. The JPS reflected two student loan debts totaling $68,057, under the heading "MARITAL DEBTS." The record contains no information regarding the initial amount of the loans or how much had been paid.

Brandon did not provide any testimony regarding the student loans. At best, he testified that Robin did not do the bookwork for the company; rather, he had a third party perform that work. However, that testimony was in conjunction with his testimony regarding what he did for the business, not as it related to the student loans. We further note that both parties filed motions for new trial and a hearing was held on those dualling motions. At that hearing, the parties went through the JPS virtually line by line and negotiated values and to whom certain items should be awarded. At no time did Brandon contest the classification of the student loan debts.

It is well settled in Nebraska that marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties, and the burden to show that a debt is nonmarital is on the party making that assertion. See *Vanderveer v. Vanderveer*, 310 Neb. 196, 964 N.W.2d 694 (2021). Robin testified she obtained her degree during the marriage to assist in the family businesses. Although Brandon disputes the work Robin performed, he did not argue that the debt was nonmarital in the district court, nor did he present any evidence to show the debt was nonmarital. Thus, the district court did not err in classifying the student loans as marital debt.

### (b) Excavators

Brandon contends the excavators were owned by his brother and thus should not have been considered marital property by the court in its distribution. He testified the excavators were at the

- 4 -

marital property because he was repairing them for his brother, who had paperwork showing he was the owner. However, Robin testified she had previously found a bill of sale transferring ownership of the excavators to Brandon, and that the excavators had been on the marital property since approximately 2020.

As previously stated, Brandon had the burden to show that the excavators were nonmarital property. See *Vanderveer, supra*. Although he testified that the vehicles were owned by his brother, he did not produce documentation to support this contention. Further, his testimony was contradicted by Robin's statement that she had found documentation showing Brandon was the owner. Although the district court did not explicitly state it found Robin to be a more credible witness, the fact that it classified the property in accordance with her testimony shows it found her to be more credible. See *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024) (appellate courts give deference to trial court's determination of credibility and its acceptance of one version of events rather than another). Brandon also did not refute Robin's testimony regarding the longevity of the excavators being on the marital property, and this evidence tends to support that Brandon was indeed the owner and had acquired the excavators during the marriage. Based on the evidence, the district court did not err in classifying the excavators as marital property.

## 2. DISTRICT COURT DID NOT IMPROPERLY VALUE ASSETS

Brandon assigns the district court abused its discretion in valuing a 2003 Rollback semi-truck at $10,000, and a 2020 International Rollback semi-truck at $105,000. He asserts he was better suited to testify about the conditions of the vehicles than Robin because he had actually driven them while operating the towing business and he provided evidence the vehicles were worth less.

At trial, Robin testified the 2003 Rollback was worth $25,000 and the 2020 Rollback was worth $105,000. She testified she valued the vehicle at $105,000 because she had found comparable vehicles with generally the same milage and condition for sale online for similar prices.

Brandon testified the 2003 Rollback had many miles on it, a bad transmission, did not run, had flat tires, and the bed was "not operational." The JPS shows he valued the vehicle at $6,000. Robin later testified that she had changed her opinion based on Brandon's testimony regarding the vehicle's condition and valued the 2003 vehicle at $10,000.

Regarding the 2020 Rollback, Brandon testified he valued the 2020 vehicle at only $76,000 because it was used, had over 50,000 miles, had some body damage, and was not in "running condition." Robin testified the vehicle had started running after Brandon's incarceration approximately a year prior to the trial.

When considering the appropriateness of a trial court's valuation, that court is entitled to deference in weighing the credibility of witnesses and evidence, including determining which evidence merits greater weight. See *Weston v. Weston*, 32 Neb. App. 822, 7 N.W.3d 230 (2024). Because the district court adopted Robin's values of the 2003 and 2020 Rollback semi-trucks, and Robin testified her values were based on comparable vehicles listed for comparable prices, we give deference to the district court's credibility findings. Although Brandon argues the district court abused its discretion in valuing these assets, the Nebraska Supreme Court has stated that valuation is a question of fact. See *Stava, supra*. And it has at times reviewed under a clearly erroneous

standard. See *Venter v. Venter*, 249 Neb. 712, 716-17, 545 N.W.2d 431, 434 (1996) ("The district court's determination of this value was not clearly erroneous.") But see *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017) (analyzing whether court abused its discretion in valuing assets). Regardless of the standard used, however, we find no error in the district court's choice of value based upon the conflicting testimony.

### 3. DISTRICT COURT EQUITABLY DISTRIBUTED MARITAL ESTATE

Brandon assigns the court abused its discretion by inequitably distributing the marital property. Specifically, he argues the court abused its discretion by awarding Robin the marital home. He contends the evidence showed that awarding the home to Robin would make it impossible for him to resume the towing business because that was where all necessary vehicles could be stored. He further argues that he had no other home, while the court had also awarded Robin two other pieces of real property on which she could live.

Although Robin was awarded two other pieces of real property, one was a one-bedroom apartment and the other included a building zoned for commercial use and an empty lot. Robin was awarded sole legal and physical custody of the parties' two children and neither property provided appropriate housing for Robin and the children.

Although Brandon testified that he wanted to return to the towing business after his release, Brandon was sentenced to serve at least 2 years' incarceration following his current incarceration and still had other unresolved criminal cases pending. He did not know when he would be released or, therefore, when he would be able to resume operating the towing business. For these reasons, the court did not abuse its discretion in awarding Robin the marital home.

Finding no error by the district court relating to the marital estate, we need not address Brandon's final argument that the equalization payment should be adjusted to reflect his proposed changes to the property distribution.

### VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court dissolving the parties' marriage and distributing their marital property.

AFFIRMED.