Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/13/2026 08:06 AM CST

Shawn P. Pebley, appellant and cross-appellee, v.
Laci D. Pebley, appellee and cross-appellant.

___ N.W.3d ___

Filed January 6, 2026.    No. A-24-844.

1. **Divorce: Child Custody: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Evidence: Appeal and Error.** When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Child Custody: Words and Phrases.** Under the Parenting Act, the concept of child custody encompasses both physical custody and legal custody, with legal custody focusing entirely on decisionmaking authority.

5. ____: ____. The term "joint legal custody" is the joint authority and responsibility for making major decisions regarding the child's welfare, while the term "sole legal custody" establishes that one party will have the final say in such decisions.

6. **Child Custody.** The best interests of the child are the primary consideration for developing custodial plans. In considering such best interests, it is a common occurrence and a court is permitted to supply a party with final decisionmaking authority in some areas to avoid future impasses which could negatively affect the child while maintaining both parents' rights to consultation and participation in important decisions.

7. **Divorce: Property Division.** Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

8. **Divorce: Property Division: Proof.** The burden of proof rests with the party claiming that the property is nonmarital.

9. **Divorce: Property Division: Equity.** The equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as separate property.

10. **Divorce: Proof.** While documentary evidence is not strictly necessary for parties to carry their burden of proof in dissolution cases, a party opting to rely upon his or her testimony alone does so at the risk of nonpersuasion.

11. **Trial: Evidence.** Evidence not directly contradicted is not necessarily binding on the trier of fact and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence.

12. **Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the court may take the economic circumstances of the parties into account and is not limited to the assets divided as part of the marital estate.

13. **Divorce: Property: Words and Phrases.** Dissipation of marital assets is defined as one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is undergoing an irretrievable breakdown.

14. **Divorce: Property Division.** The marital assets dissipated by a spouse for purposes unrelated to the marriage should be included in the marital estate in dissolution actions.

15. **Divorce: Property Division: Equity.** The purpose of assigning a date of valuation in a dissolution decree is to ensure that the marital estate is equitably divided.

16. **Divorce: Property Division: Appeal and Error.** Generally, the date upon which a marital estate is valued must be rationally related to the property composing the marital estate and the property being divided. The date of valuation is reviewed for an abuse of the trial court's discretion.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed as modified.

John W. Ballew, Jr., of Ballew Hazen Byrd, P.C., L.L.O., for appellant.

Megan E. McDowell and Terrance A. Poppe, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.

Riedmann, Chief Judge, and Moore and Welch, Judges.

Riedmann, Chief Judge.

# I. INTRODUCTION

Shawn P. Pebley appeals, and Laci D. Pebley cross-appeals, from the decree of dissolution entered by the district court for Lancaster County dissolving their marriage. Because we find the district court erred in classifying a certain account as marital and in ordering the equalization payment to be made within 60 days, we affirm as modified.

# II. BACKGROUND

Shawn and Laci were married in May 2007. They had three children, born in 2011, 2013, and 2017. On April 26, 2022, Shawn filed a complaint for dissolution of marriage. Trial was held February 7 and 8, April 15 and 16, and May 21, 2024. The record in this case is substantial, and we summarize only that evidence which is necessary to address the assigned errors on appeal.

## 1. Custody of Children

After Shawn filed for dissolution in April 2022, the parties continued to reside in the marital home until early September. A temporary order entered in October provided that the parties would have joint physical custody with a week-on-week-off schedule. Both Shawn and Laci described difficulties in coparenting, including disagreeing with decisions made by the other party. The children appeared to be doing well academically, were involved in extracurricular activities, and had no significant disciplinary issues. Shawn requested sole legal custody and final decisionmaking authority. Laci requested she be granted either sole legal custody or final decisionmaking authority.

## 2. Marital Estate

Shawn served in the U.S. Air Force, eventually moving to the U.S. Air Force Reserve. In October 2007, Shawn received a separation payment when he moved from active duty to reserve duty, with the agreement that he would repay these funds if he received military retirement benefits.

In the early 2000s, Shawn began purchasing real estate as rental properties. At trial, Shawn utilized an April 2007 real estate loan application to identify the real estate and bank accounts he asserted he owned at the time of marriage. He explained that during the marriage, some of the properties were refinanced to purchase additional properties. Others were sold, with the funds being placed back into the rental business. Shawn moved funds from premarital bank accounts into different accounts. He also provided testimony and documentation identifying funds he received as an inheritance from his grandparents and funds received as a gift from his father. Due to the difficulty in tracing the premarital property throughout the marriage and determining its current value, Shawn requested the district court characterize the real estate and accounts he owned at the time of marriage as marital property and give him a credit for the value they had on the date of marriage. In other words, Shawn agreed that all growth in the premarital property could be considered marital.

## 3. District Court Order

The district court awarded Shawn and Laci joint legal and physical custody of their children. It declined to award either party final decisionmaking authority. The district court found that Shawn had failed to prove the property listed in the April 2007 loan application was premarital and that the document was insufficient and unreliable to prove the value of the properties listed. The district court found that Shawn failed to trace his inherited funds to accounts existing at the time of filing. It determined the separation pay debt was marital and divided it evenly between Shawn and Laci. As part of the

distribution of the marital estate, Shawn was ordered to make an equalization payment of $643,789.50 within 60 days of the decree of dissolution. Additional facts will be discussed below as necessary.

## III. ASSIGNMENTS OF ERROR

Shawn assigns, combined, reordered, and restated, that the district court erred by (1) failing to grant him final decision-making authority, (2) failing to credit him for the value of his premarital real estate and other assets and in failing to treat his premarital rental real estate as a single collective asset, (3) failing to find his monetary gifts and inheritance were non-marital property, and (4) ordering him to make an equalization payment within 60 days of the entry of the decree.

On cross-appeal, restated, reordered, and renumbered, Laci assigns that the district court erred by (1) failing to award her either sole legal custody or final decisionmaking authority; (2) failing to include dissipated assets in the marital estate; (3) using incorrect valuation dates for bank accounts, Shawn's military retirement benefits, and her retirement account; and (4) finding the debt for Shawn's separation pay was marital.

## IV. STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022).

[2] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

[3] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the

facts rather than another. *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024).

## V. ANALYSIS

### 1. Shawn's Appeal

#### (a) Final Decisionmaking Authority

[4,5] Shawn assigns that the district court erred by failing to grant him final decisionmaking authority. We conclude that the district court did not abuse its discretion in this regard. Under the Parenting Act, the concept of child custody encompasses both physical custody and legal custody, with legal custody focusing entirely on decisionmaking authority. *Vyhlidal v. Vyhlidal*, 309 Neb. 376, 960 N.W.2d 309 (2021). See Neb. Rev. Stat § 43-2922(7) (Cum. Supp. 2024). The term "joint legal custody" is the joint authority and responsibility for making major decisions regarding the child's welfare, while the term "sole legal custody" establishes that one party will have the final say in such decisions. *Vyhlidal, supra.*

[6] The best interests of the child are the primary consideration for developing custodial plans. *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019). In considering such best interests, it is a common occurrence and a court is permitted to supply a party with final decisionmaking authority in some areas to avoid future impasses which could negatively affect the child while maintaining both parents' rights to consultation and participation in important decisions. *Id*.

Although a court may choose to grant a party final decisionmaking authority, this is not required. The best interests of the children are the primary consideration. Here, when declining to award either party final decisionmaking authority, the district court acknowledged the disputes caused by the lack of cooperation and communication between the parties. However, it specifically stated its belief that with the finalization of the proceedings, the parties would be able to make decisions for the best interests of the children.

It is clear that both Shawn and Laci love their children. It is also clear that each party has made parenting decisions with which the other parent disagrees. Despite the difficulties experienced during the pendency of the case, the district court believed Shawn and Laci would be able to work together in the future for the best interests of their children. Other courts have recognized that over time, divorced parents learn to reconfigure their relationship. See, e.g., *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 513, 873 N.W.2d 208, 217 (2016) (acknowledging that "'[u]sually, parties fall into a pattern of conduct that works for them to raise their child free from interference or supervision by the courts'"). We are mindful that the district court heard and observed the witnesses when making this determination. We cannot find that the district court abused its discretion in declining to award Shawn final decisionmaking authority.

## (b) Credit for Premarital Assets

Shawn assigns that the district court erred in failing to grant him credit for the value of his premarital real estate and other assets and in failing to treat his premarital real estate as a single collective asset. We find no abuse of discretion in the district court's determination that Shawn failed to prove the value of his premarital assets; thus, the district court did not err in failing to award him credit. Because Shawn failed to prove the premarital value of his real estate holdings, we need not address whether the district court erred in failing to treat them as a single collective asset. We do find error in the district court's treatment of one of Shawn's premarital accounts and find he should be given credit for its premarital value.

### (i) Additional Facts

Shawn presented an application for a real estate loan from April 2007, in which he was required to list his assets and liabilities. Shawn testified that he prepared the balance sheet for the lender and confirmed that it was a "Fannie Mae or Freddie Mac type of a situation." The application listed his

checking accounts and saving accounts, along with their balances. There was also a list of real estate Shawn owned at the time, with the market value of each property and the loans associated with it. Shawn testified that he owned one additional account not listed in the document.

The application is neither signed by Shawn nor notarized, but a signature appears in the portion of the application for an interviewer's signature. The district court determined that Shawn had "failed to meet his burden of proof in showing the premarital nature of the rental properties." It found that the loan application "purportedly showing the values of these properties or in the alternative, [Shawn's] 'net worth' [was] insufficient and unreliable given the purpose for the generation of the document and its unsigned nature" and that Shawn had admitted it was incomplete.

### (ii) Analysis

Equitable property division under Neb. Rev. Stat. § 42-365 (Reissue 2016) is a three-step process. See *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024). The first step is to classify the parties' property as marital or nonmarital. *Id*. The second step is to value the marital assets and determine the parties' marital liabilities. *Id*. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Stava, supra*.

[7,8] Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Id*. The burden of proof rests with the party claiming that the property is nonmarital. *Id*. The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact. *Id*. The manner and method of acquisition involve questions of fact, but the classification of the property under those facts is a legal question and not a matter of the court's discretion. *Id*.

[9] Property that a party brings into the marriage is usually excluded from the marital estate. See *id*. The Nebraska

Supreme Court has said that the equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as separate property. See *id*. Shawn's assigned error involves the first step of the division process. As the party seeking to set aside a portion of property as nonmarital, Shawn bore the burden of establishing what should be excluded from the marital estate. If Shawn met this burden, but that particular asset no longer existed, he would also need to trace the asset through the marriage so that it could be identified and shown to have retained its nonmarital classification. Our review of a trial court's determination of whether either of these steps was met is for an abuse of discretion. We determine that, with one exception, the district court did not abuse its discretion in determining that Shawn failed to meet his burden to establish certain property should be set aside as premarital.

Shawn used the loan application to show the premarital equity he held in certain real estate properties and financial accounts. He testified that he prepared the balance sheet for the lender and confirmed that it was a "Fannie Mae or Freddie Mac type of a situation." Although he testified that he was required to sign the application under oath that his representations were correct, the exhibit offered and received into evidence does not include his signature. It indicates that the application was taken by telephone and was signed by the interviewer. The application contained a list of the real estate Shawn claimed that he owned at the time, along with each property's market value and associated outstanding loans. It also included a list of financial accounts with their values. Shawn provided no supporting documentation, such as purchase agreements, closing statements, mortgage statements, or account statements, to support the loan application. He testified he failed to identify one account on the application.

[10,11] We acknowledge that Shawn's testimony, if believed by the district court, could be sufficient to carry his burden of proof. While documentary evidence is not strictly necessary for parties to carry their burden of proof in dissolution cases,

a party opting to rely upon his or her testimony alone does so at the risk of nonpersuasion. *Montegut v. Mosby-Montegut*, 31 Neb. App. 107, 977 N.W.2d 671 (2022). Evidence not directly contradicted is not necessarily binding on the trier of fact and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. *White v. White*, 320 Neb. 256, 26 N.W.3d 924 (2025).

The dissent accurately observes that Laci did not specifically contest Shawn's premarital ownership or its values. It argues that Shawn's testimony fits none of the categories above for a trier of fact to discredit uncontroverted testimony. However, Shawn's testimony was inconsistent with the loan application in that he testified that he filled it out and signed it. The document itself reflects that the information was taken over the telephone and was signed by only the bank representative. As noted by the *White* court, we defer to the district court's determination of the witness' credibility.

Although Shawn attempted to use the loan application to support his testimony, the district court found the document insufficient, unreliable, and incomplete. We agree with the dissent that attempting to establish the value of the properties owned 18 years prior to trial is certainly not an easy task. But other than the loan application, Shawn did not present any supporting documentation for the values contained within that document. No purchase agreements, closing statements, mortgage statements, valuations from the county assessor, or account statements were provided. Rather, the court was to determine the validity of the values based upon Shawn's representations. We consider and give weight to the fact that the district court heard and observed Shawn as a witness and found the document he presented was unreliable.

In his brief on appeal, Shawn provides additional details to support the validity of the application, but this information was not presented to the district court during trial, and we do not consider it on appeal. Generally, it is not the function of

an appellate court to review evidence that was not presented to the trial court. *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023). A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Id.*

Although we recognize that a contrary finding by the district court also would not likely be an abuse of discretion, based on this record and giving deference to the district court's determination of credibility, we cannot say that it erred in its determination that Shawn failed to prove the value of his premarital assets.

Because Shawn failed to establish the value of his premarital assets, we need not determine whether he can properly trace his premarital interests. Without knowing the extent and value of his assets at the time of marriage, it would be impossible to determine whether, and to what extent, they remained.

Shawn also argues that the district court erred in failing to treat his real estate holdings as a collective asset, similar to a "cattle herd." Brief for appellant at 35. Because Shawn failed to establish the value of his premarital interests in the properties, we need not address this argument. The district court rejected Shawn's argument that the loan application credibly established the value of his premarital assets; therefore, whether viewed as individual assets that morphed over time or as a conglomeration resulting in a single asset, the premarital value was not established. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State on behalf of Jaide Y. & Demee Y. v. Hope N.*, 33 Neb. App. 489, 18 N.W.3d 129 (2025).

There is one exception to our determination regarding Shawn's premarital property. We find that Shawn established his premarital interest in funds he held in one account that existed prior to the marriage. An April 1 to June 30, 2007, statement for a Roth individual retirement account (IRA) was

offered and received into evidence. It showed a balance of $19,866.25. Shawn provided account statements from which we can deduce that in 2009, these funds were transferred to a different Roth IRA, with the account number ending in 1373. Shawn provided a January to March 2022 statement for this same account, showing a balance of $73,871.52. In its dissolution decree, the district court identified this account as Shawn's Roth IRA and valued it at $73,872.

In its order, the district court specifically stated the loan application setting forth the premarital value of Shawn's real estate prior to marriage was insufficient and unreliable "given the purpose for the generation of the document and its unsigned nature." But unlike the rental properties and their values, Shawn presented supporting documentation of the existence and value of the Roth IRA at the time of marriage and at the time of separation.

The district court did not address the premarital value of the Roth IRA, and unlike Shawn's inherited funds that the court found Shawn failed to properly trace, the court's order is silent as to traceable moneys in the Roth IRA. Because uncontested documentary evidence was received and there was no finding by the district court that the premarital Roth IRA money was not traceable, we find the evidence presented establishes that Shawn's premarital interest in the Roth IRA, with the account number ending in 1373, was $19,866.25, making the marital portion of this account $54,005.75. We modify the district court's dissolution decree to reflect this change. This results in a change to the equalization payment.

In its decree, the district court calculated the equalization payment by totaling the net value of assets awarded to each party and dividing the number in half to determine that each party should be awarded net assets with a total value of $792,499.50. Laci had been awarded assets with a net value of $128,710, so to equalize the estate, accounting for a previously agreed upon $20,000 credit, Shawn was ordered to pay Laci an equalization payment of $643,789.50.

Removing $19,866.25 of Shawn's premarital funds from the marital estate and dividing this number in half, each party should receive net assets with a total value of approximately $782,566.38. Accounting for the net assets awarded to Laci, and for Shawn's previously agreed upon credit, Shawn now owes Laci an equalization payment of $633,856.38. We modify the district court's order to reflect this.

### (c) Gifts and Inheritance

Shawn assigns that the district court erred by failing to find his monetary gifts and inheritance were nonmarital property. Although Shawn established that he received gifts and inheritance money and that they were initially deposited into one account and then transferred to another, he failed to show the balance of the latter account was composed solely of those funds. Therefore, we find no error by the district court.

### (i) Additional Facts

In 2017, Shawn received $61,648.70 from his grandparents' trust. Shawn testified that he used these inherited funds to establish a checking account ending in 3296 (account 3296). The canceled check in the amount of $61,648.70 was received into evidence and reflects "For Deposit Only," with account 3296 listed. Shawn testified he also opened a money market account (account 7050). An account statement reflects that in April 2022, $30,000 was transferred from account 3296 to account 7050. The district court found Shawn failed to meet his burden of proof to establish that at the time of separation, these accounts were traceable to inherited moneys because there was no documentation to show that the balance in account 7050 came from account 3296. The district court valued account 7050 at $62,426.

### (ii) Analysis

The documentation provided is sufficient to establish that in 2017, Shawn received $61,648.70 in inherited funds and

placed them in account 3296. In 2022, Shawn transferred $30,000 from account 3296 to account 7050, which created a balance in account 7050 of $62,425.79. The documentary evidence supports this. However, the record includes no statement of transactions from account 3296 supporting Shawn's testimony that it was composed solely of inherited funds, nor does it include statements from account 7050 to explain where the remaining funds came from. Therefore, Shawn failed to trace the existence of his inherited funds and the district court did not abuse its discretion in determining that he failed in his burden of proof.

Although not assigned as error, Shawn raises an issue regarding an incorrect account name and number being listed on the district court's division of assets and debts. The district court incorrectly listed account 7050, the money market account, as a savings account (account 5833). We modify the district court's order to change the account named "Capital One 360 Performance Savings X5833" to "Capital One 360 Money Market X7050."

(d) Equalization Payment

Shawn assigns that the district court erred by ordering him to make an equalization payment to Laci within 60 days of the entry of the decree. Shawn argues that without awarding him value for his premarital assets, "a liquidation of numerous rental properties and the triggering of capital gains and recapture of depreciation is all but assured, particularly given the 60 days" that is allowed for the payment. Brief for appellant at 47. We find the district court abused its discretion in the manner in which it ordered the equalization payment.

[12] Under § 42-365, the court may take the economic circumstances of the parties into account and is not limited to the assets divided as part of the marital estate. *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023). A dissolution court is not required to award liquid assets sufficient to cover the cost of an equalization payment. See *id*. A party alleging error in

an equalization payment award has the burden to show that he or she is unable to make the payment. See *id.*

Although Shawn was awarded the bulk of the assets in the marital estate, the vast majority of these assets were in the form of real estate. We acknowledge that a dissolution court is not required to award liquid assets sufficient to cover the cost of an equalization payment. See *Karas, supra*. However, even when taking into consideration the economic circumstances of the parties outside of the marital estate, we fail to see how Shawn can realistically obtain funds for such a large payment within 60 days. We determine the district court abused its discretion in ordering the entire equalization payment be made within 60 days. We modify the district court's order to reflect that the equalization payment, as modified above, of $633,856.38, is payable in five equal yearly installments plus interest at the current judgment interest rate, with the first payment due 90 days after the issuance of the mandate in this case.

## 2. Cross-Appeal

### (a) Legal Custody and Final
### Decisionmaking Authority

Laci assigns that the district court erred by not awarding her either sole legal custody of the children or final decision-making authority. We find the district court did not abuse its discretion.

In support of her assigned error, Laci advances the same argument regarding final decisionmaking authority as Shawn presented in his appeal. For the same reasons we found no abuse of discretion in the district court's refusal to grant Shawn final decisionmaking authority, we find no abuse of discretion in the district court's failure to award Laci either sole legal custody or final decisionmaking authority.

### (b) Dissipation

[13,14] Laci assigns that the district court erred by failing to include dissipated assets in the marital estate. We find that

Laci failed to meet her burden of proof to show that Shawn dissipated assets. Dissipation of marital assets is defined as one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is undergoing an irretrievable breakdown. *White v. White*, 320 Neb. 256, 26 N.W.3d 924 (2025); *Schwensow v. Bartnicki*, 32 Neb. App. 798, 6 N.W.3d 549 (2024). As a remedy, the marital assets dissipated by a spouse for purposes unrelated to the marriage should be included in the marital estate in dissolution actions. *Schwensow, supra*. The party alleging dissipation of marital property has the initial burden of production and persuasion. *Id*. Although Nebraska case law does not precisely define when a marriage is undergoing an irretrievable breakdown, this court has previously declined to conclude that such breakdown can be found only when the parties are estranged or have separated. *Id*.

Laci argues that Shawn did not provide explanations showing that the money in their joint account was used for marital purposes. But as the party claiming dissipation of marital assets, Laci had the initial burden of production and persuasion. At trial, Laci testified that Shawn stopped contributing funds to the parties' joint bank account in June 2022 but still utilized funds in the joint account for things like car repairs. Shawn testified that he gave Laci credit for her paycheck and took credit for an amount that had been agreed to during their joint budgeting process. Although Laci stated Shawn did not properly credit her for funds in the joint account, Shawn testified he did. We are mindful that the district court heard and observed the witnesses and believed one version of events over another. We cannot find the district court abused its discretion.

### (c) Valuation Dates

[15,16] Laci assigns that the district court erred by using incorrect valuation dates for bank accounts, Shawn's military retirement benefits, and her retirement account. The purpose

of assigning a date of valuation in a dissolution decree is to ensure that the marital estate is equitably divided. *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). It is well settled that, generally, the date upon which a marital estate is valued must be rationally related to the property composing the marital estate and the property being divided. *Id*. The date of valuation is reviewed for an abuse of the trial court's discretion. *Id*.

### (i) Bank Accounts

Laci argues it was error to value a joint bank account as of the date Shawn filed for dissolution, as there was evidence the parties utilized the joint account after that date. Shawn testified that he disbursed the funds in a manner agreed upon by the parties. Although Laci argues the parties used the joint account after the date of filing, Shawn's testimony was that the spending that occurred during that time was accounted for in his distribution of account funds. The district court heard and observed the witnesses and found Shawn's testimony credible. We cannot say the district court abused its discretion.

Laci argues the district court erred in valuing Shawn's postseparation account. She argues that to assume this account contained no marital funds ignores Shawn's misappropriation of money from their joint account. We have already found the district court did not abuse its discretion in determining that Shawn did not dissipate marital assets. Based on the district court's decision, it did not believe that any of the funds in Shawn's postseparation bank account were marital. We cannot say that this was an abuse of discretion.

### (ii) Shawn's Military Retirement

Laci argues the district court erred in finding the end date for her portion of Shawn's military retirement benefits was the month of filing of the complaint for dissolution, rather than the date the decree of dissolution was entered. The district

court awarded Laci credit for one-half of the points Shawn accumulated through the marriage until April 2022, the month the complaint for dissolution was filed. We find no abuse of discretion in the district court's distribution of Shawn's military retirement benefits.

The Supreme Court has previously addressed the proper interpretation of a divorce decree awarding a former spouse a portion of her ex-husband's military retirement benefits. See *Weiland v. Weiland*, 307 Neb. 882, 951 N.W.2d 519 (2020). In *Weiland*, the Supreme Court explained that when Congress passed the Uniformed Services Former Spouses' Protection Act in 1982, it removed federal preemption and permitted states to apply their own laws when determining the proper distribution of military pensions. The Supreme Court noted that prior to a 2016 amendment to a federal statute regarding the award of military retirement pay, a state could determine the marital share of military retirement based on the length of service either to the date of retirement or to the date of divorce. See *Weiland, supra*, citing *Starr v. Starr*, 70 Va. App. 486, 828 S.E.2d 257 (2019).

The statute now provides in part that when there is a division of property as part of a final decree of divorce, dissolution, annulment, or legal separation that becomes final prior to the date of a member's retirement, the retired pay shall be determined based "on the date of the decree of divorce, dissolution, annulment, or legal separation." 10 U.S.C. § 1408(a)(4)(B) (2018). However, recent changes to the Department of Defense's financial management regulations have provided clarification on the language used in the statute. The regulations explain that the statute limitation is "no later than the date of the final decree of divorce, dissolution, annulment, or legal separation." Department of Defense Financial Management Regulation 7000.14-R, vol. 7B, ch. 29, ¶ 8.2.1 (May 2025). Thus, the regulation explains, if parties were divorced on October 1, 2024, but the court order utilized the date the parties separated rather than the date of the

decree to determine the proper division of retirement benefits, this would be acceptable. See *id.*

In Nebraska, valuation dates are assigned to ensure a marital estate is equitably divided. See *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). The trial court has discretion to value the marital estate in a manner that is rationally related to the property composing the marital estate and the property being divided. See *id.* Viewing the district court's division of Shawn's military retirement benefits in light of the philosophy of equitable division of marital estates in Nebraska, in connection with the federal statutes and regulations, we see no abuse of discretion here. The valuation of Shawn's military retirement benefits as of the date of filing aligns with the valuation of many other assets and is rationally related to the property composing the estate and the property being divided. Based on the valuation of the other marital assets and the distribution of the marital estate, we cannot say the district court abused its discretion in valuing Shawn's military retirement benefits as of the date of filing.

### (iii) Laci's Retirement Account

Laci assigns that the district court erred in choosing the valuation date for her retirement account. She argues the district court valued the account as of December 23, 2023, when a date closer to the date of the parties' separation was available.

### a. Additional Facts

At trial, Laci was asked if at the time of the filing of the case she had approximately $73,000 to $74,000 in her retirement account, and she responded that this was "[c]orrect." The documents Laci provided showed a balance of $71,077.75 in the account in August 2022. Laci's January 2024 answers to interrogatories were included as part of an exhibit, and she listed her retirement account as having a balance of $74,916.56. The district court valued the account at $74,916.

### b. Analysis

Considering the size of the marital estate, the difference between the district court's valuation of Laci's retirement account and her suggested value on appeal is not a significant amount. Laci's trial testimony was that near the time of filing, she had approximately $73,000 to $74,000 in her retirement account, though there are some records that dispute whether this was the correct amount. Under the circumstances of this case, we cannot say this valuation unfairly deprives Laci of a substantial right or denies her a just result. As such, we do not find this to be an abuse of discretion.

### (iv) Rental Properties

To the extent that Laci also assigns and argues that the district court erred in valuing the rental properties, we do not find an abuse of discretion. To value the real estate encompassed in the marital estate, the district court averaged the values of the rental properties between the date of filing and March 21, 2023. This valuation appears rationally related to the property and the marital estate. Although Laci argues the proper valuation date was May 2024 and the district court erred in refusing to accept the 2024 appraisals into evidence, she has not assigned this as error. As such, only the 2022 and 2023 appraisals were before the district court. Considering the facts of this case, the method chosen by the district court was an appropriate way to value the properties. We cannot find this to be an abuse of discretion.

### (d) Separation Pay Debt

Laci assigns that the district court erred in classifying Shawn's voluntary separation pay debt as marital debt. We find that the district court did not err in this regard.

### (i) Additional Facts

In 2006, Shawn signed an agreement with the armed services that provided he would receive a separation pay bonus for leaving active duty but would repay the funds if he went

back into the armed services or accepted retirement. Shawn was released from active duty in September 2007, and in October, he received $83,756.40. Shawn testified the money was used to fund the retirement accounts for both parties, pay some personal bills, and purchase a car for Laci. Laci had no evidence the separation pay was dissipated but was concerned that it had been.

Because Shawn had over 20 years of service and was retirement eligible, he had no option but to pay back the funds out of his retirement paycheck. The district court noted that Shawn signed the agreement in 2006 but did not receive the money until October 2007. It found that the money was used for family purchases and was a marital debt. It allocated half of the debt to each party.

### (ii) Analysis

Laci argues the separation pay agreement was entered into prior to the marriage, that Shawn was in control of the account into which the funds were deposited, and that there was a lack of evidence that the money was spent on marital purposes. Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties. *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023). The burden of proof rests with the party claiming that property is nonmarital. *Id*. Although Shawn signed the agreement prior to the marriage, he received the funds during the marriage and spent it for the benefit of the marriage. Because Shawn was retirement eligible, he would have to repay the funds out of his retirement. Laci failed to meet her burden of proof to show that this was not a marital debt. The district court did not abuse its discretion.

### VI. CONCLUSION

We find Shawn established that $19,866.25 in retirement funds was nonmarital and modify the district court's order to reflect that the Roth IRA, with the account ending in 1373, has a marital value of $54,005.75. We modify the district court's

order to reflect that Shawn owes an equalization payment of $633,856.38, to be paid in five equal yearly installments, with the first payment being due 90 days from the issuance of the mandate in this case. We modify the district court's order to change the account named "Capital One 360 Performance Savings X5833" to "Capital One 360 Money Market X7050." We otherwise affirm the district court's order.

Affirmed as modified.

Welch, J., concurring in part, and in part dissenting.

I respectfully disagree with the majority's affirmance of the trial court's decision not to credit Shawn with the premarital value of his real estate portfolio. It is clear from this record that prior to the parties' marriage, Shawn had acquired a rental real estate portfolio consisting of six properties. By the time of trial, Shawn had grown that portfolio and provided testimony and significant documentation as to how he had done so. And although there is a complexity to that structure, including, but not limited to, the creation of limited liability companies, a like-kind exchange, and numerous refinances to effectuate that growth, he provided a comprehensive analysis demonstrating how those premarital assets could be traced to his current portfolio, while only requesting credit for the value of the six properties he brought into the marriage.

Without going into explicit detail, Shawn established that, of the six properties for which he was requesting premarital credit, as of the time of trial, he still owned four of them, one had been exchanged utilizing I.R.C. § 1031 (2018) into another property, and the one remaining property had been refinanced to acquire other rental properties and land on Mill Road before eventually being sold.

Notwithstanding Shawn's comprehensive attempt to trace those assets utilizing exhibits 30 through 33 and his testimony, which included testimony on how those rental properties were actively managed by him, how the money was recirculated to grow the business, and how the rental real estate portfolio

was continuously managed as a separate group of properties from other marital assets, the trial court provided no premarital credit for the value of the six rental properties brought into the marriage and found:

It is incumbent upon the party seeking to identify the property as premarital, to carry the burden of doing so. [Shawn] failed to meet this burden by a preponderance of the evidence. The Court has spent a considerable amount of time, energy and effort, without the aid of expert forensic testimony and analysis, reviewing the evidence and trying to follow the "tracing" alleged by [Shawn] of his premarital holdings. The Court concludes that much like its awarding of all the rental properties to [Shawn], because of the financial gymnastics that would be required to parse out the interlocking loans and cross collateral agreements with banks, again without the aid of any forensic analysis, all the rental properties and interest in them is deemed to be marital. The Court also finds that the exhibit purportedly showing the values of these properties or in the alternative, [Shawn's] "net worth" is insufficient and unreliable given the purpose for the generation of the document and its unsigned nature. Also, by his own admission, [Shawn] testified that the document was not complete.

Insofar as the majority affirms the trial court's conclusion that Shawn failed to properly trace his six premarital rental properties into his modern portfolio, I disagree with that conclusion. As I mentioned above, the evidence established that Shawn continued to own four of the properties as of the date of trial, exchanged one of them, and produced a comprehensive analysis of how the other property was refinanced to produce more properties before eventually being sold. I also note that Laci did not dispute any of the specific relevant testimony as it related to the origin of these assets—that Shawn brought six properties into the marriage and that Shawn separately

managed and grew the real estate portfolio, including how he specifically grew it.

And as it relates to the value of the six rental properties originally brought into the marriage in 2007, Shawn produced exhibits 30 and 32 to accompany his testimony that these exhibits reflected the value and current debt position on those six rental properties as of the date of the parties' marriage. Notably, exhibit 30 was a real estate loan application submitted to a bank in 2007 in an effort to buy another property that was successfully purchased after the parties' marriage. Exhibit 30 provided written evidence of what Shawn represented to be the value of his assets and debts just prior to the parties' marriage. Again, Laci provided no testimony refuting the values Shawn ascribed to these assets at that time. This real-time document, together with Shawn's testimony as to the properties' premarital value, provided uncontroverted evidence of the value of the properties Shawn brought into the marriage. In short, there was no dispute that Shawn brought the six rental properties into the marriage, that they had a premarital value, that he still owned four of the properties by the time of trial, that he separated the rental real estate portfolio and actively managed it, that he did not request any premarital value for the appreciation of these assets during the marriage, and that Laci did not dispute any of Shawn's testimony or documentation regarding the value of all six rental real estate properties.

Attempting to establish the value of the six properties owned 18 years prior to trial is certainly not an easy task. That concept is recognized in the Nebraska Supreme Court's holding in *Burgardt v. Burgardt*, 304 Neb. 356, 364-66, 934 N.W.2d 488, 495-96 (2019), wherein the Nebraska Supreme Court, in reversing this court's rejection of a party's attempt to establish the premarital value of property without documentary evidence, held:

> A nonmarital interest in property may be established by credible testimony. In *Brozek v. Brozek*, [292 Neb. 681,

874 N.W.2d. 17 (2016),] we recognized that a spouse's own testimony can establish a "'tracing link,'" i.e., tracking an asset to a nonmarital source. Of course, triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. We acknowledged in *Brozek* that the trial court was "entitled to discount [the husband's] testimony about [an alleged premarital asset] because of his admitted uncertainty."

While documentary evidence may be more persuasive, it is not absolutely required. In a case where the husband did not produce bank statements proving the premarital balance of his bank accounts but the wife did not contest the values he listed on a joint property statement, we found an abuse of discretion by the trial court in failing to set off the value of premarital bank accounts. In *Onstot v. Onstot*, [298 Neb 897, 906 N.W.2d 300 (2018),] we affirmed the trial court's decision to not grant the husband credit for the value of a premarital house at the time of marriage, stating that "assuming [the husband's] testimony established the value of the residence at $100,000 at the time of the marriage, he did not *testify* or supply any documentation as to whether the residence was either encumbered or unencumbered at that time and, if encumbered, to what extent." This statement implies that premarital equity could have been established by testimony alone. In a case where undisputed testimony established items as premarital, the Court of Appeals determined that the trial court erred in classifying the items as marital property.

Of course, a party opting to rely upon his or her testimony alone does so at the risk of nonpersuasion. In

a case where the trial court set aside the total amount of premarital funds that the husband claimed he used to purchase property, we reduced the amount of the set aside—even though the husband's testimony was uncontradicted—because there was nothing in the record to show the source of certain funds. In *Brozek*, we affirmed the trial court's decision declining to set off any amount to the husband for the premarital portion of two checking accounts (he testified one account had about $79,000 at the time of marriage), crops from a 1993 harvest, and machinery owned at the time of marriage (but later sold or traded). A party seeking recognition of nonmarital property may find it easier to meet his or her burden of persuasion with documentary support. But its absence does not automatically defeat the claim.

Here, Shawn provided documentary evidence of the premarital value of the six properties in addition to his own testimony that the document represented the value of those six properties at the time of the parties' marriage. And as he testified, that document constituted a loan application to a bank where he was representing the then-current values in order to procure a loan to purchase another rental property, which he did purchase shortly after the parties' marriage. As I mentioned before, Laci did not specifically contest any of this. As the Nebraska Supreme Court stated, evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). Shawn's documentary and testimonial evidence fits none of those categories.

In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024). Applying that

standard, I believe, on this record, Shawn provided sufficient proof of the value of his premarital rental real estate portfolio, and I would find that the trial court abused its discretion in not crediting Shawn with the value of those six premarital rental properties he brought into the marriage. See *Ramsey v. Ramsey*, 29 Neb. App. 688, 958 N.W.2d 447 (2021) (finding that value of traceable premarital interest in home where it was not disputed by wife should have been set aside as husband's premarital interest).